546 So.2d 710 (1989)
David Wayne KIBLER, Petitioner,
v.
STATE of Florida, Respondent.
No. 70067.
Supreme Court of Florida.
June 15, 1989.
Rehearing Denied August 17, 1989.
James B. Gibson, Public Defender, and Daniel J. Schafer, Asst. Public Defender, Daytona Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., and W. Brian Bayly, Asst. Atty. Gen., Daytona Beach, for respondent.
GRIMES, Justice.
We review Kibler v. State, 501 So.2d 76 (Fla. 5th DCA 1987), because of conflict with State v. Neil, 457 So.2d 481 (Fla. 1984). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
Kibler, a white man, was convicted of burglary and four counts of sexual battery. On appeal, he challenged the trial judge's refusal to dismiss the jury on the ground that the prosecutor used peremptory challenges to strike all three black persons called for service on the prospective jury. The district court of appeal held that Kibler *711 did not have standing to raise the issue because he was not of the same race as the jurors who were challenged. The court went on to rule that even if Kibler had standing to raise the issue, the record did not demonstrate that the challenges had been exercised on a racial basis.
In Neil, this Court held that the Florida Constitution prohibits the exercise of peremptory challenges in criminal cases solely on account of race. The opinion imposed no limitation with respect to which defendants had the right to object, but in that case the defendant was black and black jurors were being challenged.
The Third District Court of Appeal specifically addressed the question before us in Castillo v. State, 466 So.2d 7 (Fla. 3d DCA 1985), approved in part, quashed in part, 486 So.2d 565 (Fla. 1986). In reversing a conviction upon the authority of State v. Neil, the court stated in footnote 1:
A sub-issue under this point is whether a defendant may protest that an identifiable group other than his own is being systematically excluded. The question was answered affirmatively by the United States Supreme Court in Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), which held that a criminal defendant, whatever his race, has standing to challenge the arbitrary exclusion of members of any race from service on a grand or petit jury.
466 So.2d at 8 n. 1. That portion of the opinion dealing with the Neil issue was later quashed by this Court on the ground that Neil should not be applied retroactively, but we did not address footnote 1. State v. Castillo, 486 So.2d 565 (Fla. 1986).
Thereafter, in a case involving a black defendant, the United States Supreme Court held that a prosecutor could not exercise peremptory challenges against black jurors solely on account of their race. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, the Court specified that in order to establish a prima facie case of purposeful discrimination in the selection of the petit jury, the defendant must first show that the challenges are directed to a cognizable racial group of which he is a member.
In determining that Kibler had no standing to object, the district court of appeal concluded that there was nothing in the Neil opinion which suggested that our Court intended a different standing test than that set forth in Batson. However, we are not convinced that had the issue been presented, the United States Supreme Court would have precluded a white defendant from objecting to peremptory challenges of black jurors solely because of race. That Court had previously sustained a complaint by a nonblack defendant against the systematic exclusion of blacks from grand jury and petit jury venires when it held:
[W]hatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law.
Peters v. Kiff, 407 U.S. 493, 504, 92 S.Ct. 2163, 2169, 33 L.Ed.2d 83 (1972). Three years later, the same Court faced another standing question in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), in which a male defendant argued that because women were systematically excluded from the jury venire, he would be deprived of his federal constitutional right to a fair trial by an impartial jury. The Court rejected the argument that the defendant had no standing because he was not a member of the excluded class and held that the sixth amendment required that the defendant's jury be chosen from a fair cross-section of the community.
Several courts have limited the cross-section analysis under the sixth amendment to the selection of the jury venire and have declined to extend it to the trial jury itself. Willis v. Zant, 720 F.2d 1212 (11th Cir.1983), cert. denied, 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 851 (1984); United States v. Childress, 715 F.2d 1313 (8th Cir.1983), cert. denied, 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984). However, the California Supreme Court in People v. Wheeler, *712 22 Cal.3d 258, 583 P.2d 748, 148 Cal. Rptr. 890 (1978), held that the California equivalent of the sixth amendment dictated that peremptory challenges could not be exercised against blacks because of group bias even in cases where the defendant was white. The Supreme Judicial Court of Massachusetts reached a similar conclusion when it held that common group membership of a defendant and the challenged jurors was not a prerequisite to the assertion of a complaint. Commonwealth v. Soares, 377 Mass. 461, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979). Accord State v. Superior Court, 157 Ariz. 541, 760 P.2d 541 (Ariz. 1988); Seubert v. State, 749 S.W.2d 585 (Tex. Ct. App. 1988). Although Peters v. Kiff involved the exclusion of a discrete racial group during the venire selection rather than during voir dire, we see no rational difference which would preclude racial discrimination in one but not the other. The systematic exclusion of prospective jurors solely because of their race is equally wrong at any stage of the jury selection.
In Batson v. Kentucky, the Supreme Court may have specified that the defendant must be of the same race as the challenged jurors because its decision was predicated upon the equal protection clause of the fourteenth amendment. Since the Court was not addressing a sixth amendment assertion of the right to an impartial jury, it was unnecessary to address the question before us in the instant case. However, our decision in Neil was unmistakably based upon article I, section 16 of the Florida Constitution. In Neil we said:
Article I, section 16 of the Florida Constitution guarantees the right to an impartial jury. The right to peremptory challenges is not of constitutional dimension. The primary purpose of peremptory challenges is to aid and assist in the selection of an impartial jury. It was not intended that such challenges be used solely as a scalpel to excise a distinct racial group from a representative cross-section of society. It was not intended that such challenges be used to encroach upon the constitutional guarantee of an impartial jury.
457 So.2d at 486.
We hold that under article I, section 16 of the Florida Constitution it is unnecessary that the defendant who objects to peremptory challenges directed to members of a cognizable racial group be of the same race as the jurors who are being challenged. This does not mean, however, that the respective races of the challenged jurors and of the person who objects to the challenges may not be relevant in the determination of whether the challenges are being unconstitutionally exercised because of group bias. Under the procedure prescribed by Neil, the objecting party must ordinarily do more than simply show that several members of a cognizable racial group have been challenged in order to meet his initial burden. Thus, a defendant of a different race than the jurors being challenged may have more difficulty convincing the trial court that "there is a strong likelihood that they have been challenged only because of their race." Moreover, in those cases in which the inquiry has been directed to the challenging party, the respective races of the challenged jurors and the defendant may also be relevant in the determination of whether the challenging party has met the burden of showing that the challenges were made for reasons not solely related to race. See Commonwealth v. Soares.
We recognize that this opinion places further limitations on the ability to exercise peremptory challenges. However, we are unable to fashion any other rule which will maintain the credibility of our criminal justice system. The right of an accused to an impartial jury cannot be fully guaranteed when the peremptory challenge is used to purposefully exclude members of a cognizable racial group, regardless of the race of the defendant.
Notwithstanding, we are also in full accord with the admonition of Taylor v. Louisiana that:
[W]e impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive *713 groups in the population. Defendants are not entitled to a jury of any particular composition.
419 U.S. at 538, 95 S.Ct. at 702. It may often be that no members of a particular race will be on a given jury because of the racial composition of the community as reflected by the random section of the venire or because all members of that race will have been challenged for specific biases relating to the case. Parties are only constitutionally entitled to the assurance that peremptory challenges will not be exercised so as to exclude members of discrete racial groups solely by virtue of their affiliation.
Referring now to the case at hand, we find pertinent the following colloquy which took place during voir dire:
MS. FORRESTER: Okay. Judge, I would note for the record that the State has challenged all the black people on the jury. And I'd like to specifically request the Court inquire as to reasons given for excluding the blacks on the jury starting with 
THE COURT: Let the record reflect that the State, the record should reflect the State exercised three of its preemptory challenges and those three of, all prospective jurors of the  that were black, Willie Williams was one.
MR. BOGLE: Thelma Danvers and Harry Jones.
And short of held, of being held in contempt I refuse to respond to the Defendant's accusations when the Defendant is white.
MS. FORRESTER: It doesn't matter if the Defendant's white. It's across-the-board exclusion of all the blacks on the panel. And I think for that reason the State needs to articulate reasons.
THE COURT: I'm going to request that you give some reason or give the reasons, if you would, recognizing the Defendant in this case is white, just in the event the State versus Neal, N-E-A-L, is expanded to 
MR. BOGLE: I didn't have a good feeling  Ms. Danvers was not intelligent enough, I don't believe. She's a housekeeper. She wasn't able to answer my questions.
THE COURT: Williams.
MR. BOGLE: Let the record reflect he served on a DUI jury and convicted a man in front of Judge Formet three and a half years ago. I had no objection to him. In this case I preferred other jurors.
THE COURT: Jones.
MR. BOGLE: In this particular case I have no objection to Mr. Jones other than I got to Teresa Chandler and Edith Crouch, I liked them better.
THE COURT: Can you represent to the court there was no motivation to discriminate?
MR. BOGLE: It was not to discriminate against any particular race. I took everything into account known to me from the questionnaires they filled out and answers they gave me without any belief I was doing it for racial reasons. I do not believe I was.
MS. FORRESTER: I'd like to point out just in response to that, in response to that I'd like to point out, in response to the answer given, in Ms. Danvers' case, she was a housewife.
MR. BOGLE: Housekeeper for the Comfort Inn.
MS. FORRESTER: Keeper. I'm sorry. I misunderstood. I thought he said housewife. I was going to point out there are other housewives on the jury.
I would like to make my objection, Your Honor. I don't think those grounds are sufficient. It requires articulable reasons, and not because the prosecutor doesn't feel that these are suitable.
MR. BOGLE: We can start tomorrow morning at 10:00 o'clock with a whole new panel. That's a, the remedy. I refuse to participate in this. Neal requires a prosecutor  I don't see how the prosecutor can be partial with a white defendant.
[At this point the court begins discussing another matter.]
Obviously, the trial judge was uncertain whether the appellant had standing to object *714 to the challenges. With an abundance of precaution, he asked the prosecutor to state the reasons for his challenges. The judge made no finding that the appellant had made a prima facie showing of discrimination though this could be implied from the fact that he requested the prosecutor to give reasons. Perhaps because no one was certain of his or her position, the matter ended inconclusively without any ruling with respect to whether or not the challenges had actually been made solely because of a racial basis.
The appellant does not take issue with the reasons given for excluding Thelma Danvers. However, he challenges the reasons for excusing Mr. Williams and Mr. Jones. In its brief, the state refers to other portions of the voir dire which reflect reasons unrelated to race that might have been a legitimate basis to excuse Mr. Williams and Mr. Jones. However, the Neil inquiry must necessarily focus on the reasons given by the prosecutor for making the challenge. The bare bones statement that there was no intent to discriminate does not suffice. Presumably, the prosecutor's assertion that he preferred other jurors means that because of the jury selection procedure in that jurisdiction, he knew which jurors in the venire would be replacing those excused. Eliminating one juror in order to reach another is a legitimate basis for exercising a peremptory challenge. However, in the context of Neil, it would be incumbent on the prosecutor to give nonracial reasons for having challenged the black jurors rather than the white jurors in his effort to make room for the new persons he sought to have join the panel. Having failed to do so, the prosecutor did not carry the burden of showing that his challenges of Mr. Williams and Mr. Jones were not exercised solely because of their race. State v. Slappy, 522 So.2d 18 (Fla. 1988).
We disapprove of the opinion of the district court of appeal, reverse the conviction and remand the case for a new trial. As in the case of Neil, this opinion shall not be given retroactive application.
It is so ordered.
OVERTON, SHAW and KOGAN, JJ., concur.
BARKETT, J., concurs specially with an opinion.
EHRLICH, C.J., dissents with an opinion.
McDONALD, J., dissents with an opinion, in which EHRLICH, C.J., concurs.
BARKETT, Justice, concurring specially.
I write only to express my great ambivalence in this case. The additional difficulty presented by our resolution of this issue is readily apparent. However, to hold otherwise means that we can prevent racial discrimination through peremptory challenges only if by happenstance the defendant is of the same racial minority as the challenged juror. If I must choose between the two, I must choose to prohibit discrimination or the appearance of it regardless of the cost.
EHRLICH, Chief Justice, dissenting.
I share Justice Barkett's great ambivalence in this case. I am concerned that the Court, for all practical purposes, is putting the final nail in the coffin of peremptory challenges in criminal trials.
I, too, seek a rule which maintains the creditability of our criminal justice system, and I, too, want both parties, the state and the defendant, to have nothing less than a fair and impartial jury. The dilemma arises from the fact that a peremptory challenge is itself an inherently discriminatory challenge. It is a challenge without cause. "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." Swain v. Alabama, 380 U.S. 202, 220, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965). In my opinion, despite its inherently discriminatory nature, the peremptory challenge is an essential tool in the trial lawyer's quest to obtain a fair and impartial jury.
*715 Section 913.03, Florida Statutes (1987), lists twelve grounds for a challenge for cause. The grounds for a challenge for cause must be articulated with specificity and come within the enumerated statutory grounds or otherwise satisfy the trial court that the prospective juror will not be fair and impartial. However, traditionally no ground need be given for a peremptory challenge. Whereas challenges for cause are theoretically unlimited in number, that is not so with peremptories. Although the trial court has discretion to give additional peremptory challenges, they are specifically limited. § 913.08, Fla. Stat. (1987).
The picking of a jury is an art, not a science. There are as many techniques or "systems" for picking a jury as there are trial lawyers. Jury selection is the subject of countless writings, but the art is acquired by experience. The so-called "reasons" for exercising a peremptory challenge are virtually limitless. In so very many cases, the lawyer cannot come up with an articulable reason for the challenge. Most times the decision to excuse a venireman is simply a visceral or gut reaction. Something about the prospective juror strikes the trial lawyer adversely. It may be nothing more than the venireman's mannerisms, his facial expressions, the manner in which he responds to questions, how he conducts himself during the voir dire process, the manner in which he looks at the client, etc. The "chemistry" simply is lacking and so the prospective juror is excused. All of this in the quest for a fair and impartial jury. Each side, prosecution and defense, does its thing in the use of peremptory challenges; hopefully the end result is a jury that each is satisfied with and that will give both the state and the defendant a "fair shake," to use the vernacular of the gaming table.
State v. Neil, 457 So.2d 481 (Fla. 1984), changed the scenario, and properly so. That case dealt with a black defendant and black prospective jurors. It is not difficult to understand and appreciate the essential fairness of the rule in that context. This case is an extension of Neil. We have a white defendant who complains about the peremptory excusal of black jurors, without being able to point to anything on the record which would suggest that the defendant would likely be harmed by the alleged discriminatory practice. Where the defendant and the prospective juror being peremptorily excused are of the same minority race, harm or prejudice may very well be presumed. In the factual context of this case, however, it is impossible to make any assumption of prejudice resulting from the excusal of the black jurors. Justice McDonald's dissent is right on target.
In our endeavor to rid the courtroom of prejudice in the selection of jurors, we have dulled, if not obliterated, the edge of the one weapon best suited to ensure that the jury is fair and impartial. I fully anticipate that as a result of this holding many persons who are unsuccessfully challenged peremptorily in a truly race-neutral manner are going to be left on juries simply because a reason for the exercise of the challenge cannot be articulated to the trial court's satisfaction, even though the trial lawyer's instincts and experience tell him that the challenged juror is a "ringer," that is, the juror is not going to be fair and impartial. When this comes to pass, justice will not be served. Perhaps this is the cost that Justice Barkett speaks about in her concurring opinion, but it is this cost which is so disturbing to me.
I am also apprehensive that, despite our best efforts, racial discrimination in jury selection may not be completely eliminated by placing Neil restrictions on the use of peremptory challenges. It may very well be that Justice Marshall is correct when he said that the goal of ending racial discrimination in jury selection can be accomplished only by eliminating peremptory challenges entirely. Batson v. Kentucky, 476 U.S. 79, 108, 106 S.Ct. 1712, 1729, 90 L.Ed.2d 69 (1986) (Marshall, J., concurring). As a matter of fact, white jurors may still be challenged peremptorily on a racial basis.
McDONALD, Justice, dissenting.
I agree that Neil may apply to a white defendant. Even so, in this proceeding it is clear to me that while Kibler made a proper objection to the state's peremptory challenges *716 of three black jurors, he made no showing of any circumstances which might suggest that he would have been prejudiced by the challenge of these jurors. I think this is essential for a reversal when a white person is complaining of a Neil violation. My independent review of the record indicates nothing in the case which suggested the possibility of racial overtones. Accordingly, I conclude that the court did not err in declining to sustain Kibler's objection and that the selection of his jury was not tainted.
I would disapprove the opinion of the district court of appeal to the extent that it holds that Neil is never applicable to a white defendant, but affirm Kibler's conviction.
EHRLICH, C.J., concurs.