565 So.2d 1298 (1990)
James Allen BRYANT, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
Dee Dyne CASTEEL, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
Michael IRVINE, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
William E. RHODES, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
Nos. 71356, 71357, 71258 and 71355.
Supreme Court of Florida.
March 29, 1990.
Rehearing Denied September 6, 1990.
*1299 Geoffrey C. Fleck of Friend & Fleck, Sp. Asst. Public Defender, South Miami, for James Allen Bryant.
Lee Weissenborn, Miami, for Dee Dyne Casteel.
Sheryl J. Lowenthal, Coral Gables, for Michael Rhae Irvine.
Gary W. Pollack of Merrill & Pollack, Sp. Asst. Public Defender, Coral Gables, for William E. Rhodes.
Robert A. Butterworth, Atty. Gen., and Charles M. Fahlbusch, Asst. Atty. Gen., Miami, for the State.
PER CURIAM.
James Allen Bryant, Dee Dyne Casteel, Michael Irvine, and William E. Rhodes appeal their convictions for numerous offenses, including two counts of first-degree murder, and their sentences of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We find that our decisions in Kibler v. State, 546 So.2d 710 (Fla. 1989), and State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), decided subsequent to the trial of these defendants, require us to reverse and remand for a new trial because of the trial judge's failure to conduct the required Neil[1] inquiry after the prosecution excused peremptorily five black prospective jurors out of its first seven peremptory challenges. We also find that, under the circumstances of this cause, the trial judge improperly joined these appellants.
The relevant facts reflect that Bryant, Casteel, Irvine, and Rhodes were tried together for the 1983 murders of Arthur Venecia and his mother, Bessie Fischer, and for other connected criminal acts. The theory of the prosecution was that Bryant, the homosexual lover and managerial employee of Venecia, instigated these murders, while Casteel, who had been employed by Bryant in Venecia's restaurant, procured the hit-men, Irvine and Rhodes.
Over defendants' objections, the court tried all of them together in an extensive trial. Each defendant made self-implicating statements, but limited his or her involvement while placing blame on the others. Redacted statements of each of the defendants were introduced. The redacted statements contained explanations of the participation of the others, using pronouns and the word "someone" in place of the codefendants' names. Bryant was the only defendant who did not testify.
The jury found each of the defendants guilty of two counts of first-degree murder for the killings of Venecia and Fischer.[2] The jury recommended that each defendant receive two death sentences for the murder convictions. The trial judge imposed upon Bryant a death sentence for the murder of Venecia and life imprisonment for the murder of Fischer, upon Casteel a death sentence for the murder of Fischer and life imprisonment for the murder of Venecia, upon Irvine a death sentence for the murder of Fischer and life imprisonment for the murder of Venecia, and upon Rhodes a death sentence for the murder of Venecia and life imprisonment for the murder of Fischer.
The appellants raise numerous issues. We find the following claims to be dispositive: (1) the state utilized its peremptory challenges to systematically exclude blacks, and (2) the trial court erred in refusing to sever the trials. Discussion of the remaining claims is unnecessary. We also find it unnecessary to discuss the state's cross-appeals.

Systematic Exclusion of Jurors
The jury selection process took several days and involved four separate jury venires. *1300 During voir dire, the following transpired:
THE COURT: Montgomery.
[STATE]: Peremptory by the State, Judge.
MR. KERSHAW: I would like the record to reflect Mr. Montgomery is black.
THE COURT: Lapsley.
[STATE]: Peremptory by the State.
MR. KERSHAW: I would like the record to reflect that Mr. Lapsley is also a black American.
... .
THE COURT: Norwood.
... .
[STATE]: We will excuse peremptory.
MR. KERSHAW: Let the record reflect that Mr. Norwood is also a black American.
... .
THE COURT: Blue.
[STATE]: Peremptory challenge by the State.
MR. KERSHAW: Let the record reflect that Ms. Blue is a black American.
... .
[STATE]: And let the record reflect that since it has never been stated before, that none of the defendants are black Americans.
... .
[STATE]: State would excuse peremptorily Ms. McGee from the first panel.
MR. KERSHAW: Let the record reflect that McGee is black... .
I ask at this time the Court to have a Neil inquiry as to why the State has chosen to excuse his five peremptory challenges, five out of the seven peremptory challenges towards blacks.
THE COURT: All right. Denied.
As noted above, the state exercised five of its first seven peremptory challenges to excuse black jurors, and the trial judge summarily denied the requests for a Neil inquiry. The parties eventually selected six black and six white jurors after the state had exercised sixteen peremptory challenges, seven of which were against black persons. The critical issue is whether the state's peremptory challenges required a Neil inquiry.
In Thompson v. State, 548 So.2d 198 (Fla. 1989), we stated:
[I]n Slappy we expressly reaffirmed the test established in Neil. Under that test, parties alleging that group bias is the reason for the excusal of any distinct class of persons from a venire must (a) make a timely objection, (b) demonstrate on the record that the challenged members are part of that group, and (c) show that there is a strong likelihood these persons have been challenged because of impermissible bias. Neil, 457 So.2d at 486.
In Slappy, we extended the principles of Neil by holding that "broad leeway" must be accorded to the objecting party, and that any doubts as to the existence of a "likelihood" of impermissible bias must be resolved in the objecting party's favor. Slappy, 522 So.2d at 21-22. Whenever this burden of persuasion has been met, the burden of proof then rests upon the state to demonstrate "that the proffered reasons are, first, neutral and reasonable and, second, not a pretext." Id. at 22.
Id. at 200 (emphasis added; footnote omitted). We find that this record demonstrates that the appellants satisfied their burden. They timely objected, demonstrated that the challenged jurors were black, and established a likelihood that the peremptory challenges resulted from impermissible bias, specifically, that the state exercised five of its first seven peremptory excusals against black persons. We note, as we did in Slappy, that the likelihood of impermissible bias must be resolved in the objecting party's favor. 522 So.2d at 22.
The state initially asserted that these four white appellants had no standing to challenge any systematic exclusion of blacks. We recently rejected this contention in Kibler v. State, 546 So.2d 710 (Fla. 1989), in which we held that the objecting party does not have to be a member of the race being challenged to have standing. In doing so, we based our decision on article I, section 16, of the Florida Constitution, *1301 stating: "The right of an accused to an impartial jury cannot be fully guaranteed when the peremptory challenge is used to purposefully exclude members of a cognizable racial group, regardless of the race of the defendant." Id. at 712. We recognized in Kibler that juries are not required to mirror the community in a manner that reflects the racial composition of the community: "Parties are only constitutionally entitled to the assurance that peremptory challenges will not be exercised so as to exclude members of discrete racial groups solely by virtue of their affiliation." Id. at 713. While Kibler is controlling, we acknowledge the recent United States Supreme Court decision in Holland v. Illinois, ___ U.S. ___, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). Although the United States Supreme Court held that a white defendant had no sixth amendment right to challenge the exclusion of prospective black jurors, five justices[3] agreed that a white defendant has standing to raise a fourteenth amendment claim of racial bias.
Although the state proffered no reasons to justify its actions to the trial court, it now contends that the record shows reasons which were neutral and reasonable and not a pretext. By making this argument, the state is asking this Court to review the bare record and make a determination without the benefit of an inquiry and an independent evaluation by the trial judge. The purpose of a trial judge's Neil inquiry is to (1) obtain additional information about the challenge from the challenging counsel and (2) permit the trial judge to evaluate all of the information that he heard during voir dire with the reasons given by challenging counsel. This process was established to assure that trial counsel gives his or her reasoning at or near the time the challenges are made and to permit the trial judge to evaluate those reasons in light of the jurors' responses to determine whether the reasons are neutral and reasonable and not a pretext.
The state argues that the fact that the actual jury contained six black persons establishes that the prosecution did not exclude persons because of race. In Slappy, we quoted the United States Court of Appeals for the Eleventh Circuit in United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987), vacated in part on other grounds, 836 F.2d 1312, cert. dismissed, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988), stating: "`[T]he striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when there are valid reasons for the striking of some black jurors.'" Slappy, 522 So.2d at 21. While the responses of some of the challenged black jurors during voir dire appear to indicate valid bases for challenges, it would be impossible for this Court to make that evaluation for each of the black jurors challenged. We conclude that an evaluation by the trial judge was required in this cause.

Joinder and Severance
In McCray v. State, 416 So.2d 804 (Fla. 1982), we set forth the general principles of joinder and severance, stating:
Rule 3.152(b)(1) directs the trial court to order severance whenever necessary "to promote a fair determination of the guilt or innocence of one or more defendants... ." As we stated in Menendez v. State, 368 So.2d 1278 (Fla. 1979), and in Crum v. State, 398 So.2d 810 (Fla. 1981), this rule is consistent with the American Bar Association standards relating to joinder and severance in criminal trials. The object of the rule is not to provide defendants with an absolute right, upon request, to separate trials when they blame each other for the crime. Rather, the rule is designed to assure a fair determination of each defendant's guilt or innocence. This fair determination may be achieved when all the relevant evidence regarding the criminal offense is presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct, and statements, and can then apply the law intelligently and without confusion to determine the individual defendant's guilt or innocence. *1302 The rule allows the trial court, in its discretion, to grant severance when the jury could be confused or improperly influenced by evidence which applies to only one of several defendants. A type of evidence that can cause confusion is the confession of a defendant which, by implication, affects a codefendant, but which the jury is supposed to consider only as to the confessing defendant and not as to the others. A severance is always required in this circumstance. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
In situations less obviously prejudicial than the Bruton circumstance, the question of whether severance should be granted must necessarily be answered on a case by case basis. Some general rules have, however, been established. Specifically, the fact that the defendant might have a better chance of acquittal or a strategic advantage if tried separately does not establish the right to a severance. United States v. Cravero, 545 F.2d 406 (5th Cir.1976), cert. denied, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977); United States v. Perez, 489 F.2d 51 (5th Cir.1973), cert. denied, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). Nor is hostility among defendants, or an attempt by one defendant to escape punishment by throwing the blame on a codefendant, a sufficient reason, by itself, to require severance. United States v. Herring, 602 F.2d 1220 (5th Cir.), cert. denied, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 732 (1979); United States v. Ehrlichman, 546 F.2d 910 (D.C. Cir.1976), cert. denied, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977); Perez; Hawkins v. State, 199 So.2d 276 (Fla. 1967), vacated on other grounds, 408 U.S. 941, 92 S.Ct. 2857, 33 L.Ed.2d 765 (1972). If the defendants engage in a swearing match as to who did what, the jury should resolve the conflicts and determine the truth of the matter.
416 So.2d at 806 (emphasis added; footnotes omitted). When two or more defendants are tried together, our rules provide for the admission of a redacted statement when the state proposes to introduce into evidence a codefendant's statement. Florida Rule of Criminal Procedure 3.152(b)(2) states:
If a defendant moves for a severance of defendants on the ground that an oral or written statement of a co-defendant makes reference to him but is not admissible against him, the court shall determine whether the State will offer evidence of the statement at the trial. If the State intends to offer the statement in evidence, the court shall order the State to submit its evidence of such statement for consideration by the court and counsel for defendants and if the court determines that such statement is not admissible against the moving defendant, it shall require the State to elect one of the following courses:
(i) a joint trial at which evidence of the statement will not be admitted;
(ii) a joint trial at which evidence of the statement will be admitted after all references to the moving defendant have been deleted, provided the court determines that admission of such evidence with deletions will not prejudice the moving defendant; or
(iii) severance of the moving defendant.
(Emphasis added.)
In the instant case, the redacted statements of all four appellants were introduced. Casteel, Irvine, and Rhodes testified in their own behalf while Bryant did not testify. Casteel, Irvine, and Rhodes argue that the redacted statements were prejudicial to them and that the introduction of Bryant's statement constituted a Bruton violation.[4] Bryant contends that the redacted version of his statement was prejudicial because it did not truly present his version of the incidents. He asserts that his statement confused the jury because of the use of the word "someone" and pronouns in place of the names of each of the other appellants. The appellants also argue that they were entitled to a *1303 severance because their positions were adverse and hostility existed among them.
At the outset, we emphasize again that hostility among defendants and the attempt by one defendant to place more blame on others are not justifiable reasons by themselves to require a severance. See, e.g., Dean v. State, 478 So.2d 38 (Fla. 1985); McCray; Moriyon v. State, 543 So.2d 379 (Fla. 3d DCA), review dismissed, 549 So.2d 1014 (Fla. 1989); Biscardi v. State, 511 So.2d 575 (Fla. 4th DCA 1987).
We find, however, that the trials should have been severed since Casteel, Irvine, and Rhodes were unable to cross-examine Bryant. A Bruton violation occurred because Bryant's redacted statement, when considered with the other statements, effectively inculpated the other codefendants and could have confused the jury about the extent of each one's participation. Further justification for severance in this cause is the prejudicial effect of the redacted statements, which could have confused the jury as to each participant's involvement. This case is distinguishable from McCray, in which we found that the "evidence presented was not so complex that the jury would be confused by it and incapable of applying it to the conduct of each individual defendant," 416 So.2d at 807, and concluded that the trial judge properly denied the motion for severance. We are unable to make that conclusion from this record. We conclude that these appellants cannot properly be tried together.
For the reasons expressed, we find we must reverse the convictions and sentences for all the appellants and remand for new trials.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion.
McDONALD, Justice, concurring in part and dissenting in part.
I concur that a new trial is mandated because it was not possible to have a fair trial with four defendants for two crimes under the circumstances of this case. The state relied heavily on redacted statements. Those edited statements modified the meaning and context in which the statements were uttered, caused confusion, and clearly violated the dictates of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Because of the use of the prejudicial statements, each defendant failed to receive a fair trial; they should be tried separately.
I would not grant a new trial on the State v. Neil, 457 So.2d 481 (Fla. 1984), issue. Although the trial judge did not hold a Neil inquiry, it is manifest from the record that the peremptory challenges were not racially motivated. Additional evidence of that fact is furnished by the final composition of the jury of six blacks and six whites.

ON MOTION FOR REHEARING
The Motion for Rehearing, having been considered in light of the revised opinion, is hereby denied.
Upon consideration of the Motion for Attorney's Fees filed in the above styled cause by the attorney for Appellant, DEE DYNE CASTEEL,
IT IS ORDERED that said Motion is hereby granted; the amount to be determined by the trial court. See Fla.R.App.P. 9.400(b), 351 So.2d 981.
SHAW, C.J., and OVERTON, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., concurs in result only.
NOTES
[1] State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986).
[2] The jury also found Bryant guilty of one count of burglary and five counts of grand theft; Casteel guilty of one count of burglary and four counts of grand theft; Irvine guilty of two counts of burglary; and Rhodes guilty of two counts of burglary.
[3] Stevens, Kennedy, Marshall, Brennan, and Blackmun, J.J.
[4] Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).