591 So.2d 981 (1991)
Andrew Anthony ELLIOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 90-3149.
District Court of Appeal of Florida, First District.
December 13, 1991.
*982 Nancy A. Daniels, Public Defender, Abel Gomez, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Gypsy Bailey, Asst. Atty. Gen., and Wendy S. Morris, Certified Legal Intern, Tallahassee, for appellee.
WIGGINTON, Judge.
As a result of the rule established in State v. Neil, 457 So.2d 481 (Fla. 1984), it was foreseen that a defendant "would not be able to peremptorily challenge white jurors solely for the purpose of increasing the number of blacks on his jury." 457 So.2d at 489 (Alderman, J., dissenting). Five years later, the decision in Kibler v. State, 546 So.2d 710 (Fla. 1989), prompted then Chief Justice Ehrlich, in his dissenting opinion, to express his apprehension that despite the court's "best efforts, racial discrimination in jury selection may not be completely eliminated by placing Neil restrictions on the use of peremptory challenges... . As a matter of fact, white jurors may still be challenged peremptorily on a racial basis." 546 So.2d 710. Such foreshadowings have become manifest and the inevitable has transpired. During the selection of the jury prior to appellant Andrew Elliott's trial for aggravated assault on a law enforcement officer with a firearm and for carrying a concealed firearm, the state objected to what appeared to be a systematic challenge of adult white males by Elliott's defense counsel. Without ruling on the record whether that objection made a prima facie case sufficient to shift the burden to the defense, the trial court immediately required the defense counsel to state his reasons for striking the three individuals. Finding counsel's reasons "vague and nebulous" and insufficient, the trial court denied his challenge of one of the jurors and seated him on the jury.[1] On appeal, appellant challenges the trial court's ruling in that regard, and, because we agree ultimately with his prayer for relief, we reverse this cause and remand for a new trial.
In arguing that the trial court erred in denying defense counsel's peremptory strikes against three white male jurors, *983 appellant initially submits that the court wrongly assumed that a Neil inquiry applies to the peremptory challenge of white jurors. Recognizing that the supreme court decided Neil with a history of black discrimination in mind, appellant posits that the Neil test assumes that blacks are in the minority in jury pools. Thus, in his opinion, the concerns in a "traditional" Neil case are rarely the same as those concerns at issue when a prosecutor alleges that white male jurors are subject to discrimination. Appellant goes on to reason that applying Neil to the exclusion of white jurors when whites compose the majority on a jury pool is senseless. Thus, when a party alleges that whites are being excluded in a discriminatory manner, the complaining party should also demonstrate that whites compose a minority of the jury pool.
As authority for his theory, appellant cites several supreme court cases following Neil that utilize "minority" language in their decisions. See e.g., State v. Slappy, 522 So.2d 18 (Fla. 1988); and Reynolds v. State, 576 So.2d 1300 (Fla. 1991). Nevertheless, although we agree with appellant that the burden may be greater on the complaining party to establish racial motivation when Neil is used to protect white jurors, we disagree fundamentally with appellant's position that Neil does not apply to white jurors unless they are in the minority of the jury venire.[2]
In Neil and, later, in State v. Slappy, the supreme court was careful to clarify its position on invidious discrimination in the jury selection process. Thus, in Neil's opening paragraph, the court asserted its belief "that it is time in Florida to hold that jurors should be selected on the basis of their individual characteristics and that they should not be subject to being rejected solely because of the color of their skin... ." 457 So.2d at 482. Next, in State v. Slappy, the court made the following observation:
The need to protect against bias is particularly pressing in the selection of a jury, first, because the parties before the court are entitled to be judged by a fair cross-section of the community, and second, because our citizens cannot be precluded improperly from jury service.
522 So.2d at 20 (emphasis added). Although subsequent language in Slappy might suggest that the court was narrowing its focus to minority members on the jury, we conclude that the term "minority" was used in the context in which the challenge arose. In subsequent cases, the "minority" status of the challenged juror or jurors was simply viewed as a factor to be considered in whether the burden of proof of the complaining party should be shifted to the challenging party to give non-racial reasons for the peremptory strikes, and was never cited as a prerequisite for the bringing of a Neil challenge in the first instance. For example, in Reynolds v. State, the supreme court noted that in the companion case to Slappy, Blackshear v. State, 521 So.2d 1083 (Fla. 1988), the court confronted a situation in which the prosecutor peremptorily excused all eight members of a minority. There, the court stated that "excusal of all the minority members was sufficient to shift the burden of proof to the state once the defense had made its objection under Neil." Reynolds, 576 So.2d at 1301 (emphasis added). Following that observation, the court in Reynolds went on to reemphasize a point made earlier in Slappy that a peremptory challenge "is uniquely suited as a tool to mask true motives." Id. However, the court further observed that "this mask becomes especially opaque when a peremptory strike eliminates the only minority venire member available for jury service." Id. The issue in Reynolds was whether the defense had made a prima facie showing of racial motivation in order to shift the burden to the state. The minority status of the prospective jurors clearly was a consideration in *984 determining whether a prima facie showing had been made.
That the issue is not one of minority status alone is also seen in the analysis in Kibler v. State, 546 So.2d 710 (Fla. 1989), wherein the supreme court examined the issue of whether a white defendant may object to peremptory challenges directed by the state to black potential jurors. The supreme court's resolution of that issue in favor of the challenge was not predicated solely on the minority status of the juror or on the color of the skin of the defendant. Rather, the supreme court held:
... that under article I, section 16 of the Florida Constitution it is unnecessary that the defendant who objects to peremptory challenges directed to members of a cognizable racial group be of the same race as the jurors who are being challenged. This does not mean, however, that the respective races of the challenged jurors and of the person who objects to the challenges may not be relevant in the determination of whether the challenges are being unconstitutionally exercised because of group bias. Under the procedure prescribed by Neil, the objecting party must ordinarily do more than simply show that several members of a cognizable racial group have been challenged in order to meet his initial burden. Thus, a defendant of a different race than the jurors being challenged may have more difficulty convincing the trial court that "there is a strong likelihood that they have been challenged only because of their race." Moreover, in those cases in which the inquiry has been directed to the challenging party, the respective races of the challenged jurors and the defendant may also be relevant in the determination of whether the challenging party has met the burden of showing that the challenges were made for reasons not solely related to race.

546 So.2d at 712 (emphasis added).
Thus, the minority or majority status of the challenged jurors and of the complaining party, or, for that matter, their respective races, do not establish the threshold requirements for a Neil challenge but rather are relevant factors to be considered in the overall inquiry of whether there is a racially motivated peremptory strike of a cognizable racial group. The fact that the supreme court has consistently utilized the general phrase, "cognizable racial group," undoubtedly shows that it is leaving open, as foreshadowed in the dissenting opinions quoted above, the opportunity of a complaining party to object to peremptory strikes of any juror based on that juror's race if racial motivation can be established. Accordingly, we reject appellant's preliminary argument that a Neil inquiry was improper here, solely because the jurors were white and composed a majority of the venire.[3]
*985 Our holding that there was no impediment for the state to bring a Neil challenge in the first instance against defense peremptory strikes leveled against white jurors leads us now to resolve the issue under traditional Neil and Slappy analyses, keeping in mind the admonition of the supreme court in Reed v. State, 560 So.2d 203 (Fla. 1990), that the trial judge is vested with broad discretion in determining whether peremptory challenges are racially intended. As reiterated in Reed, the procedure established in Neil and Slappy requires, first, that the complaining party make a prima facie showing that there has been a strong likelihood that the jurors were challenged because of their race. If the judge makes that finding, the burden is then shifted to the challenger to demonstrate valid and nonracial reasons why the individual jurors were struck.
In the context of the instant case, we note initially that the transcript of the hearing on this issue did not begin with the state's objection to the defense's striking of the three white male jurors, but, rather, with the court's observation that the white jurors were in fact peremptorily challenged and its request that the defense attorney state its reasons for striking the three individuals. It is only later in the discussion that the state places "on the record" that the inquiry "was initiated because the State objected to what appeared to be a systematic challenge of adult white males." Ordinarily, that objection, without more, would be insufficient to establish a prima facie showing of a strong likelihood that the jurors were challenged because of their race. However, because the transcript of the hearing reveals that just prior to the court's observation and inquiry to defense counsel there was a bench conference that ensued off the record, we are unable to state with certainty that the state's objection was so narrowly formed. Thus, since the record is not entirely clear on this point, and because "any doubt as to whether the complaining party has met its initial burden should be resolved in that party's favor," Slappy, 522 So.2d at 22, we resolve the doubt in favor of the state and move on to examine the defense's reasons given for the peremptory strikes.
Under the circumstances leading to this inquiry, the discussion in Kibler v. State is particularly relevant. In the instant case, when questioned by the court, defense counsel responded that he struck the three white male jurors "in an attempt to develop a jury that we believe is a cross-section." He went on to state that he was attempting primarily to reach a white female juror who he felt to be particularly receptive to defense questioning. In response, the court inquired of counsel why, in doing so, he did not "strike some of these other people then? You are leaving blacks on and striking whites." The court went on to assert that the only conceivable reason it could see for striking any of the three men was in regard to one of the jurors who had served previously on a jury where the defense counsel had prosecuted. The court allowed that strike, but as to another juror, the court stated that if defense counsel did not have any other articulable reason than to achieve a cross-section of the community, it would deny the exercise of the peremptory challenge. Defense counsel responded that he had no further reasons but would simply point to case law supporting his position that a defendant has a right to *986 select jurors he believes would hear his case fairly. When the court again observed that defense counsel could have "stricken any number of other possible jurors had [he] wanted other than white males," defense counsel responded by striking another juror and asking the record to reflect that that juror was a black male. Again, defense counsel emphasized he was proceeding thusly at the request of appellant and because of his desire to reach the white female juror, as well as another juror.
Indeed, "[e]liminating one juror in order to reach another is a legitimate basis for exercising a peremptory challenge." Kibler v. State, 546 So.2d at 714. However, that rule was qualified in Kibler when, in the context of Neil, it would be incumbent on the complaining party to give non-racial reasons for having challenged the jurors in his effort to make room for the new person he sought to have join the panel.
In that regard, the state argues here that prior to making the challenges, defense counsel directed no question specifically to the white veniremen and therefore could elicit no evidence of bias from them. It points out that under Slappy, "failure to examine the juror" weighs heavily against the legitimacy of a race-neutral reason.
However, we must agree with appellant that more likely than not, where the peremptory challenges are being used to strike members of the majority race, the state, as the objecting or complaining party, carries an enormous burden to establish invidious racial motivation. This echoes the observations in Kibler that in some instances, depending on the context of the strike, the races of the challenged jurors and of the person who objects will be relevant in determining whether the challenges are being unconstitutionally exercised because of group bias and whether the challenging party has met the burden of showing that the challenges were made for reasons not solely related to race. In this case, we find particularly persuasive the fact that defense counsel was attempting to reach another white juror and, in an effort to do so, struck in addition a black potential juror. Contrary to what we perceive as a strained and nearly contrived effort on the state's part to prove that racial motivation occurred in the instant case, we feel that the record overwhelmingly establishes that the peremptory strikes were racially neutral. The trial court's statement that the defense counsel had no "real basis" for striking the jurors was completely without foundation. A review of the record indicates nothing in the case which suggests the possibility of racial overtones. Were we to hold otherwise, based on this record, we would effectively bury the proverbial coffin to which then Chief Justice Ehrlich metaphorically alluded in his dissenting opinion in Kibler. There he expressed his concern that the court, in allowing a white defendant to complain of state peremptory strikes of black jurors, "for all practical purposes, is putting the final nail in the coffin of peremptory challenges in criminal trials."[4]
*987 Accordingly, in the total context of the record, we hold that reasonable persons could not arguably agree as to the propriety of the trial court's action on this point, Files v. State, 586 So.2d 352 (Fla. 1st DCA 1991) (on rehearing), and therefore reverse and remand for a new trial.[5]
ERVIN and SHIVERS, JJ., concur.
NOTES
[1] The court found the peremptory strike of another juror to be legitimate. There was no further inquiry concerning the strike of the third white prospective juror.
[2] We would point out that appellant does not take issue with whether the state has standing to challenge on the basis of Neil the defense use of peremptory challenges. Albeit in dicta, the supreme court clearly held that "both the state and the defense may challenge the allegedly improper use of peremptories." Neil, 457 So.2d at 487. See also Joseph Aldret v. State, 592 So.2d 264 (Fla. 1st DCA 1991).
[3] Although the analysis employed by the supreme court in Neil and in subsequent cases is generally predicated on a defendant's right under Article I, section 16 of the Florida Constitution to be judged by an impartial jury made up of a fair cross-section of the community, language employed by the court in Slappy, as above-quoted, reveals its concern, as well, that citizens be not precluded improperly from jury service. That latter concern formed the foundation of recent U.S. Supreme Court decisions decrying discrimination in the jury selection process in both the criminal and civil arenas which acted to deny the individual jurors equal protection of the laws. Consequently, the Court held that every citizen, without regard to race or majority or minority status, has the right to participate in our system of justice as a juror. See Powers v. Ohio, 499 U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); and Edmonson v. Leesville Concrete Company, 500 U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). For that reason, we are even more compelled to reject appellant's argument on this point.

Indeed, in a different context, the Supreme Court precisely rejected appellant's argument when, in University of California Regents v. Bakke, 438 U.S. 265, 294-296, 98 S.Ct. 2733, 2750-2751, 57 L.Ed.2d 750 (1978), it held as follows:
Petitioner urges us to adopt for the first time a more restrictive view of the Equal Protection Clause and hold that discrimination against members of the white "majority" cannot be suspect if its purpose can be characterized as "benign"
The clock of our liberties, however, cannot be turned back to 1868. [Citations omitted.] It is far too late to argue that the guarantee of equal protection to all persons permits the recognition of special wards entitled to a degree of protection greater than that accorded others [footnote omitted]. "The Fourteenth Amendment is not directed solely against discrimination due to a `two-class theory'  that is, based upon differences between `white' and Negro." [Citation omitted.]
Once the artificial line of a "two-class theory" of the Fourteenth Amendment is put aside, the difficulties entailed in varying the level of judicial review according to a perceived "preferred" status of a particular racial or ethnic minority are intractable. The concepts of "majority" and "minority" necessarily reflect temporary arrangements and political judgments. As observed above, the white "majority" itself is composed of various minority groups, most of which can lay claim to a history of prior discrimination at the hands of the State and private individuals. Not all of these groups can receive preferential treatment and corresponding judicial tolerance of distinctions drawn in terms of race and nationality, for then the only "majority" left would be a new minority of white Anglo-Saxon Protestants. There is no principled basis for deciding which groups would merit "heightened judicial solicitude" and which would not [footnote omitted].
[4] But compare the circumstances in People v. Davis, 142 Misc.2d 881, 537 N.Y.S.2d 430 (N.Y. Sup. Ct. 1988) wherein the prosecution's objection to defense peremptory challenges of white jurors was sustained. In so doing, the trial court was persuaded by many factors, including the following: (1) the defendant, a black man, was charged with the attempted murder of nine white and Hispanic police officers; (2) from the explanations given, it became evident that several jurors were in fact excused for reasons that were solely racially motivated (e.g., one was excused because he was a "`white dominating male,'" and another because he was "`born in County Corke [sic], Ireland.'" 537 N.Y.S.2d at 440); (3) despite defense counsel's alleged sensitivity to the racial differences between the defendant and the prospective white jurors, no inquiry was made to the prospective white jurors as to their racial attitudes. Additionally, in determining whether the prosecution had made a prima facie showing, the trial court noted that the prosecution had shown that the defense used its peremptory challenges to exclude all eight white prospective jurors who had not been excused for cause. Furthermore, the defense counsel's "past conduct" in the case (presumably by way of pre-trial statements to the media) made it certain that his objective was to obtain a non-white jury and not simply to be careful in the selection process with regard to white jurors. Thus, compared to the factual circumstances in Davis, the dearth of predicate circumstances showing racial motivation herein is compelling.
[5] In doing so, we need not reach appellant's remaining points, which involve his own, more traditional, Neil objection to the state's exercise of peremptory strikes, as well as an objection to the court's imposition of costs.