FERGUSON, Judge.
During examination of prospective jurors the prosecutor asked, generally, whether anyone would give more credibility to a police officer’s testimony than to that of a civilian witness. All of the panel members responded negatively with a shaking of the head. Kenneth Johnson, a black man, was singled out by the prosecutor for the following further inquiry:
Prosecutor: Mr. Johnson, you are shaking your head no. Well the reverse is also true, would anyone here disbelieve or discount what a cop is saying just because he’s a cop and you happen to not like police officers ?
******
Mr. Johnson: What?
Prosecutor: About police officers, would you—
Mr. Johnson: I have nothing against police officers.
Prosecutor: What?
Mr. Johnson: I have nothing against police officers.
[Emphasis supplied].
Johnson was challenged peremptorily. When instructed by the court to “articulate a reason” for removing the venireman pursuant to the requirements of State v. Neil, 457 So.2d 481 (Fla.1984), the prosecutor gave the following explanation:
Prosecutor: The reason I have chosen to strike Mr. Johnson is when I asked about the police officers, and my question was, would anyone here believe a police officer more because he was wearing a shiny badge? He shook his head, and went, huh, and, like, shrugged; and I got very bad vibes from that; and for that reason, I don’t want him on my jury, whether he’s black, white or whatever; and also, for the record, I know it’s not one of the criteria but I do want the record clear that I have accepted two black jurors, Fletcher and Molton.[1]
[Emphasis supplied].
The question here is whether the State gave racially neutral explanations for the *286 strike that were “clear”, “reasonably specific” and “legitimate” as required by State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). We hold that it did not and reverse the convictions and thirty-year sentence for burglary and petit theft.
We note at the outset that the question assumed, provocatively, and without a factual basis, that the prospective juror had a dislike for police officers. As phrased, the question was likely to evoke the peeved reaction that followed, and which the State relies on as justification for the peremptory challenge.[2] The supreme court in Slappy approved this court’s holding that such questioning weighed against the legitimacy of a race-neutral explanation. Certainly, a counsel-instigated antagonism with a prospective juror, alone, will not suffice as a race-neutral basis for a peremptory challenge in the face of a claim that the challenge is based on race.
Further, that the prosecutor received “bad vibes” from the juror’s responses is not a clear and reasonably specific explanation for the exercise of a peremptory challenge. One dictionary definition of a vibration is an “occult or supernatural influence,” Webster’s Third New International Dictionary, 2549 (1986), which, as an explanation, advances the same mysteriousness as the “superstition” explanation we rejected in Floyd v. State, 511 So.2d 762 (Fla. 3d DCA 1987), rev. denied, 545 So.2d 1369 (Fla.1989). See also Foster v. State, 557 So.2d 634, 635 (Fla. 3d DCA 1990) (a “feeling” about a juror does not satisfy the Neil test). Such instincts, not further explained, “may often be just another term for racial prejudice.” Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (Marshall, J., concurring).
Recent disclosures about the work of jury selection experts signal that trial judges should be more vigilant and less deferential in the process in order to preserve and protect the integrity of jury trials. “High-tech jury selection,” according to the professionals, has as its objective stacking a jury with members who are biased in favor of the client. See Gail D. Cox, Experts Helped Pick King Jury, National Bar Journal, May 25, 1992, at 3. It is exclusively the function of the presiding judge to ensure that the goal of seating a fair and impartial panel is not undermined by masked misuse of peremptory challenges.
Reversed and remanded for a new trial.
BASKIN, J., concurs.

. The State correctly conceded that under Sloppy the issue is not whether several jurors have been excused because of their race, but whether any juror has been so excluded, independent of any other. See Wright v. State, 586 So.2d 1024 (Fla.1991); Bryant v. State, 565 So.2d 1298 (Fla.1990).

. The question to Mr. Johnson, referring to a dislike for police officers, prompted a smile from a white panel member. The prosecutor interrupted her questioning of Johnson to make a surly inquiry of that venireperson.
Prosecutor: You are not allowed to smile, without telling me why your are smiling. Is that Mr. Staley?
Mr. Staley: Yeah.
Prosecutor: Why did you smile when I said that [to Mr. Johnson]?
Mr. Staley: I don’t know. I was just laughing. I just thought it was funny.
Prosecutor: Oh, okay.
Mr. Staley: Just a sentiment, in other words, the way you said [it].
Prosecutor: Just the way I said it, okay.
Mr. Staley was excused by the State’s second peremptory challenge.