546 So.2d 1042 (1989)
Robert Wright ROUNDTREE, Appellant,
v.
STATE of Florida, Appellee.
No. 69613.
Supreme Court of Florida.
July 6, 1989.
*1043 Jefferson W. Morrow of David & Morrow, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Bradford L. Thomas, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Robert Wright Roundtree appeals his conviction for first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse both the conviction and the sentence and remand to the trial court for proceedings consistent with this opinion.
Robert Roundtree and his codefendant, Walter Lee Brown, drove to an apartment complex in a stolen Monte Carlo automobile on October 10, 1985. The two men approached the victim who was cleaning the trunk of his Toyota which was parked next to his apartment. While Roundtree guarded the victim, Brown entered the victim's apartment and took $250.00 from the dresser located in the bedroom. The victim was then ordered into the trunk of one of the vehicles.[1] Roundtree and Brown drove away in the other vehicle, leaving the car containing the victim parked at the apartment complex with a note on the trunk. The note advised the reader that a man was in the trunk of the automobile.
Later, Roundtree and Brown returned to the apartment complex and drove the victim to a nearby church where he was shot four times with a rifle belonging to a relative of Brown. In their confessions both men implicated the other as the "trigger man."
In the early morning hours of October 11, 1985, Roundtree, Brown and another man returned with both cars to the victim's apartment to burglarize it. The three men fled when they saw a police car. When the men returned later that day to retrieve the Toyota, Brown was arrested. On October 14, 1985, Roundtree was arrested at his home.
*1044 Prior to trial Roundtree and Brown each filed motions for severance, which were based on conflicting statements made by the two men in their confessions. These motions were renewed during trial and during the penalty phase proceedings. All the motions were denied.
Roundtree and Brown were tried jointly by jury. At the conclusion of the trial, the jury found both defendants guilty of first-degree murder. Following the penalty phase, the jury returned an advisory sentence recommending death. The trial court adjudicated Roundtree guilty of first-degree murder and after finding five aggravating circumstances and no statutory mitigating factors, sentenced him to death.
Roundtree contends that the prosecutor exercised the state's peremptory challenges to systematically excuse blacks from the jury. In State v. Neil, 457 So.2d 481, 486 (Fla. 1984), we established the procedure based on article I, section 16, of the Florida Constitution, to be followed when a party seeks to challenge the opposing party's peremptory excusals:
A party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race.
(Footnote omitted.) We clarified the standards of Neil in State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), and held that any doubt as to whether the complaining party has met the initial burden required under Neil should be resolved in that party's favor. The burden then shifts to the state to rebut the inference that the use of the peremptory challenges is racially motivated. The state must proffer reasons that are, first, neutral and reasonable and, second, not a pretext. Additionally, the trial judge cannot merely accept the proffered reasons at face value, but must evaluate those reasons as he or she would weigh any disputed fact.
During the jury selection process, Roundtree's trial counsel moved for a mistrial following a timely objection to the state's exclusion of prospective black jurors after the third black juror was excused. Noting that the state exercised its first three peremptory challenges to excuse blacks, the trial court made the requisite finding under Neil of a substantial likelihood that the challenges were exercised solely on the basis of race. The trial court then required the state to give reasons for its peremptory challenges. The motion for mistrial was denied. Defense counsel repeatedly renewed his motion for mistrial following the state's excusal of seven more prospective black jurors. The trial court continued to require the state to explain its reasons for the challenges, but counsel's motions for mistrial were always denied. As in Slappy, it appears from our examination of the record that the trial judge believed he was bound to accept the state's explanations at face value since he questioned neither the state nor the prospective juror following the state's explanations.
In Slappy, we agreed with the district court that the legitimacy of the state's race-neutral explanations would be questioned if certain factors were present that would tend to show the reasons were not actually supported by the record or were an impermissible pretext. The five factors mentioned in Slappy are: (1) alleged group bias not shown to be shared by the juror in question; (2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel questioned the juror; (3) singling the juror out for special questioning designed to evoke a certain response; (4) the prosecutor's reason is unrelated to the facts of the case; and (5) a challenge based on reasons equally applicable to jurors who were not challenged.
In this case, we need not determine whether the state's reasons are neutral and reasonable because under the circumstances presented they are obvious pretext. First, two black males were excused because they were inappropriately dressed. The state objected because the first juror was clothed in gray dress slacks, a white shirt with the collar and cuffs buttoned, and a knit tie. The other juror was not *1045 wearing a suit or tie. While the state objected to both jurors' clothing, specifically commenting that the first juror was wearing maroon socks and "pointy New York shoes," it willingly accepted a white male juror who was wearing an open-collared shirt and had a leather jacket hanging on the back of his chair.
Two more black jurors were challenged by the state because of their views regarding the death penalty although both indicated that they could follow the law and recommend a sentence of death if the circumstances of the case so warranted. The state objected to another prospective black juror because she was thirty years old, single, and had never been employed. However, the record shows that the state accepted an unemployed white female to sit on the jury. Furthermore, while three blacks were excused because, among other reasons, they were single, this factor did not cause the state to disqualify five whites from serving. As its explanation for challenging the ninth black juror, the state told the court that it was striking this woman because it preferred a predominantly male jury. However, the state accepted thirteen white females, six of whom sat on the jury that tried the case, even though the state had seven peremptory challenges remaining. Finally, the state rejected the tenth prospective black juror because of her felony arrest record.[2]
It is not sufficient that the state's explanations for its peremptory challenges are facially race neutral. The state's explanations must be critically evaluated by the trial court to assure they are not pretexts for racial discrimination. The reasons given by the state for excluding the prospective black jurors in this case were not based on the facts of the case and were unrelated to the parties or the witnesses. We find the proffered reasons were a pretext for racial discrimination, and therefore we must reverse appellant's conviction and remand for a new trial.
Roundtree also contends it was error for the trial court to deny his motions for severance in both the guilt and penalty phases. We agree.
Both Roundtree and his codefendant Brown gave confessions to the police. The statements in both confessions correspond in many details. However, they differ regarding which defendant induced the other to commit the crime and which defendant actually committed the murder. Roundtree claimed that once they reached the church where the victim was murdered, Brown ordered him to drive down the street, park, and return in five minutes. When Brown returned to the car, he told Roundtree he had shot the victim in the back, stomach, neck, and head. Roundtree maintained he did not witness the murder. Brown, on the otherhand, claimed that upon arriving at the church, Roundtree told Brown to wait for him down the street by a bridge. Several minutes later Roundtree returned, and then both men went to the church where Brown viewed the dead body of the victim. At trial both Roundtree and Brown accused each other of being solely responsible for the murder for which they were charged.
When Roundtree entered a motion for severance during pretrial proceedings,[3] his counsel advised the trial court that Roundtree's defense and that of his codefendant would be antagonistic based on the conflicting statements contained in the confessions and the pretrial testimony of the investigating detectives regarding additional statements made by each defendant during interrogation. We recognize that because the murder occurred during the course of an armed robbery and based on Roundtree's own confession, Roundtree could have been found guilty of felony murder during the guilt phase of the trial regardless of whether he actually pulled the trigger and murdered the victim. While this is true, a defendant nonetheless has the right to rely upon nonstatutory mitigating evidence during the penalty phase that he did not murder the victim and that he did not plan or participate in the murder. Since there were no witnesses to the murder, the only evidence that Roundtree was the trigger *1046 man comes from codefendant Brown's confession.
Under the United States Supreme Court's decision in Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), the confession of Roundtree's codefendant should have been deemed inadmissible at their joint trial. In Cruz, the Court held that when a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, the confrontation clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him. Id. at 193, 107 S.Ct. at 1719. The Court went on to qualify that the defendant's confession could be considered at trial in assessing whether his codefendant's statements are supported by sufficient "indicia of reliability" to be directly admissible against him (assuming the "unavailability" of the codefendant) despite the lack of opportunity for cross-examination and may be considered on appeal in assessing whether any confrontation clause violation was harmless. Id. at 193-94, 107 S.Ct. at 1719-20.
Confessions that interlock in their factual recitations may be used to rebut the presumption of unreliability that attaches to a codefendant's confession. See Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). Although the confessions in this case interlock on many details, the discrepancies between the two confessions are significant. When intent is a crucial element of the charged offense, codefendants' statements that implicate each other as the sole murderer cannot be deemed interlocking. Id. Thus, when the discrepancies involve material issues such as the roles played by the defendants and whether the crime was premeditated, a codefendant's confession is not rendered reliable because it happens to contain facts that interlock with the facts in the defendant's statement. Id. Absent the opportunity for cross-examination, the admission of Brown's confession denied Roundtree his right to confront the witness against him in violation of the confrontation clause of the sixth amendment. Allowing both Roundtree and Brown to be tried jointly forced Roundtree to defend against the accusations made by Brown in both the guilt phase and the penalty phase of the trial. By denying the motion for severance, the trial court ostensibly forced Roundtree to stand trial before two accusers: the state and his codefendant. Crum v. State, 398 So.2d 810 (Fla. 1981).[4]
As we stated earlier, it may be that Roundtree would have been convicted of felony murder and sentenced to death on the strength of his own confession. In view of Roundtree's confession, the admission of the codefendant's confession at trial could be deemed harmless, but we cannot say that Roundtree's confession cured the prejudicial effect of the codefendant's accusatory statements during the penalty phase of the trial. Under the circumstances presented, we find the trial court erred in denying Roundtree's motions to sever in both the guilt phase and the penalty phase of the trial.
In view of our decision, it is unnecessary to address the remaining points raised by Roundtree. For the reasons expressed, we reverse Roundtree's conviction and sentence, and remand to the trial court for a new trial in which Roundtree is to be tried separately from his codefendant Brown.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., concurs in result only.
NOTES
[1] In his confession Roundtree stated the victim was placed in the trunk of the Monte Carlo while Brown's confession stated the victim was ordered into the trunk of the Toyota.
[2] Defense counsel agreed that the state had a valid reason for challenging this juror.
[3] The motion was renewed and denied again during the guilt phase and the penalty phase of the trial.
[4] This case is distinguishable from Puiatti v. State, 521 So.2d 1106, cert. denied, ___ U.S. ___, 109 S.Ct. 184, 102 L.Ed.2d 153 (1988). In Puiatti the codefendants not only gave separate interlocking confessions, but they subsequently entered into a joint confession which resolved all prior inconsistencies. Unlike the confessions in this case, the confessions in Puiatti were truly interlocking, and thus the requisite reliability was established.