586 So.2d 352 (1991)
Wayne FILES, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1080.
District Court of Appeal of Florida, First District.
August 30, 1991.
Michael E. Allen, Public Defender, Lawrence M. Korn, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Wayne Mitchell, Certified Legal Intern, Bradley R. Bischoff, Asst. Atty. Gen., for appellee.

*353 ON MOTION FOR REHEARING
We deny the state's motion for rehearing, filed June 10, 1991, to strike the certified question in this case. However, the original majority and dissenting opinions are withdrawn and the following opinions are substituted therefor:
MINER, Judge.
Wayne Files appeals his convictions on three counts of dealing in stolen property, contending that the trial court erred in denying his motion to strike the jury panel following the state's allegedly discriminatory use of peremptory challenges, and that the evidence was insufficient to support his convictions. We find that the evidence was sufficient to support the convictions, and that the trial court did not abuse its discretion in denying the motion to strike the jury panel. Accordingly, we affirm appellant's convictions.
During the course of voir dire examination, the prosecutor excused two black prospective jurors. Defense counsel objected to the state's use of peremptory challenges on these prospective jurors suggesting that they were racially motivated. The court then inquired as to the state's reasons for the exercise of these challenges. The prosecutor responded that although his information sheet indicated that the first black prospective juror challenged had been convicted of DUI, that juror had failed to respond when he asked if any prospective juror had been convicted of any offense. His articulated reasons for striking the other prospective juror were that she was divorced, had five children, was unemployed and that he preferred jurors who worked or had other visible means of support. After the state's response, defense counsel, calling the stated reasons "superfluous," moved to strike the jury panel. The trial court denied the motion. A jury was seated and sworn and appellant's trial commenced. He was found guilty as charged, adjudicated and sentenced. This appeal then ensued.
In Reed v. State, 560 So.2d 203, 206 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990), the Florida Supreme Court observed:
Within the limitations imposed by State v. Neil, [457 So.2d 481 (Fla. 1990)] the trial judge necessarily is vested with broad discretion in determining whether peremptory challenges are racially intended. State v. Slappy [522 So.2d 18 (Fla. 1988)]. Only one who is present at the trial can discern the nuances of the spoken word and the demeanor of those involved. Given the circumstances ... we cannot say that the trial judge abused his discretion in concluding that the defense had failed to make a prima facie showing that there was a strong likelihood that the jurors were challenged because of their race.
* * * * * *
In trying to achieve the delicate balance between eliminating racial prejudice and the right to exercise peremptory challenges, we must necessarily rely on the inherent fairness and color blindness of our trial judges who are on the scene and who themselves get a "feel" for what is going on in the jury selection process.
See also Knight v. State, 559 So.2d 327, 328 (Fla. 1st DCA), review dismissed, 574 So.2d 141 (Fla. 1990).
In Reynolds v. State, 576 So.2d 1300 (Fla. 1991), the court noted:

Reed vests significant discretion in the trial court on Neil issues by requiring appellate courts to show deference to the trial court's conclusions. Specifically, Reed states that the appellate courts must "rely on the inherent fairness and color blindness of our trial judges who are on the scene and who themselves get a `feel' for what is going on in the jury selection process." However, Reed rested on the assumption that, in the context of that case, some sort of Neil inquiry must have been made in the first instance.
Id. at 1302 (citations omitted).
Case law indicates that appellate review of trial court rulings concerning the alleged discriminatory use of peremptory challenges seems to depend upon how the trial court responded to the initial objection. *354 In cases like Reynolds, where the trial court chooses not to conduct a Neil inquiry, the reviewing court is presented with no conclusion to which deference can be shown, and the case may well be reversed. But where a trial court, exercising its broad discretion in considering whether a party has established the required "strong likelihood," asks the noncomplaining party to explain its peremptory challenges and determines that those explanations are reasonable, race-neutral and non-pretextual, its findings are entitled to great deference.
The "abuse of discretion" standard has found application in both civil and criminal contexts. Justice Overton explained in Canakaris v. Canakaris, 382 So.2d 1197, 1202-03 (Fla. 1980), that a reviewing court must give great deference to findings of fact in family law matters:
Judicial discretion is defined as:
The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.
1 Bouvier's Law Dictionary and Concise Encyclopedia 804 (8th ed. 1914). Our trial judges are granted this discretionary power because it is impossible to establish strict rules of law for every conceivable situation which could arise in the course of a domestic relation proceeding. The trial judge can ordinarily best determine what is appropriate and just because only he can personally observe the participants and events of the trial.
We cite with favor the following statement of the test for review of a judge's discretionary power:
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

Delno v. Market Street Railway Company, 124 F.2d 965, 967 (9th Cir.1942).
In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
The widely recognized Canakaris standard was applied in Huff v. State, 569 So.2d 1247 (Fla. 1990), wherein the trial judge struck a motion for postconviction relief on the ground that the attorney signing the motion was not admitted to practice law in Florida prior to ruling on counsel's motion to admit him pro hac vice. The court held that a denial of the latter motion would have been an abuse of discretion because nothing appeared of record which cast doubt on the standing of the attorney from another jurisdiction, and that striking the rule 3.850 motion prior to a ruling on the motion pro hac vice violated the appellant's due process rights.
Just as the Neil inquiry is designed to ferret out impermissible bias in voir dire selection, the Richardson[1] inquiry is designed to expose procedural prejudice occasioned by a party's discovery violation. In Lucas v. State, 376 So.2d 1149 (Fla. 1979), the court held that it is within the "broad discretion" of the trial judge, after an adequate inquiry, to determine whether a defendant has been prejudiced by a discovery violation.[2] In Parce v. Bryd, 533 So.2d 812 *355 (Fla. 5th DCA 1988), review denied, 542 So.2d 988 (Fla. 1989), the court applied the Canakaris standard in holding that the trial court improperly granted mistrial for an alleged Richardson violation.
The Canakaris standard was also applied in determining the propriety of a departure sentence in Booker v. State, 514 So.2d 1079 (Fla. 1987):[3]
Inquiring into whether the trial court abused its discretion necessarily turns on the specific facts presented in each case. If, based upon the entire set of circumstances presented, the reviewing court finds the sentence so excessive as to shock the judicial conscience, this will likely evidence an abuse of discretion. Reviewing courts which have held that they possess the power to review a sentence on these grounds have articulated a variety of phrases which, in fact, comport to the abuse of discretion standard adopted by this Court in Canakaris.

Id. at 1085 (citations omitted).
The abuse of discretion standard has been applied in Slappy and in other Florida cases reviewing Neil inquiries.[4] Federal courts likewise apply a "great deference" standard of review, under which a trial court's findings in determining whether peremptory challenges were exercised in a discriminatory manner will not be disturbed unless "clearly erroneous."[5] Several states have followed the federal standard.[6] Based upon the foregoing analysis, *356 we hold that the abuse of discretion standard, as discussed in Canakaris, is the appropriate standard by which an appellate court should review lower court Neil inquiries into the "`Slappworthyness'"[7] of proffered explanations for peremptory challenges. Here, the judge implicitly concluded that the prosecutor's explanations were race-neutral, reasonable and non-pretextual by denying the defendant's motion to strike the jury panel. This court must therefore determine whether the trial judge's Neil-inquiry conclusions fell within his vested breadth of discretion as espoused in the Reynolds  Reed paradigm.
It is clear that in conducting a Neil inquiry, the trial judge is engaged primarily in fact finding. This court's review of such a case is therefore limited to determining whether the basis for the judge's findings of fact "appear of record" and whether the complaining party has shown a clear and palpable abuse of discretion by demonstrating the judge's conclusions to be clearly erroneous. This court is not authorized to conduct a de novo review of the voir dire examination. In the instant case, we are presented with the trial court's exercise of discretion in accepting the state's reasons within the confines of a Neil inquiry. Applying the principles in Neil, Slappy, Reed and Reynolds to this trial judge's ruling, we cannot say that the judge abused his discretion.
As to the first prospective black juror challenged, it is apparent from the record that the prosecutor asked not only whether any of the jurors had had dealings with the state attorney's office or contacts with law enforcement officials, but also whether anyone present or any of their relatives had ever been arrested for any type of crime. Although several jurors admitted having previous convictions or experiences with law enforcement officers, this prospective juror said nothing. Although the prosecutor did not produce the information sheet indicating that the juror had actually been convicted of DUI, his representation of a prior felony conviction was a valid reason for exercising a peremptory challenge.[8]Roundtree v. State, 546 So.2d 1042 (Fla. 1989); Tillman v. State, 522 So.2d 14 (Fla. 1988); Stephens v. State, 559 So.2d 687 (Fla. 1st DCA 1990), approved on other grounds, 572 So.2d 1387 (Fla. 1991); Knight, 559 So.2d at 327 (Fla. 1st DCA), review dismissed, 574 So.2d 141 (Fla. 1990).
As to the second prospective black juror challenged, it is apparent from the record that while two other jurors were divorced and one other juror was unemployed, none of the other jurors selected were both unemployed and divorced with five children. Had the prosecutor offered only unemployment or divorce as an explanation for the exercise of this peremptory *357 challenge, we may have been required to find that the trial judge abused his discretion by accepting the reason as nondiscriminatory. See Slappy v. State, 522 So.2d at 22 (Fla. 1988). But, because the combination of unemployment, and divorce may arguably indicate some prospect of a level of detachment from the proceedings not based on race, we cannot say that reasonable persons would not differ as to the propriety of this reason for excusing the juror.
Just as a trial judge has broad discretion, within the limitations imposed by Neil, in factually determining whether a complaining party has met the initial burden of showing a "strong likelihood" that the peremptory challenge was exercised in a discriminatory manner,[9] he also has broad discretion within those same limits in evaluating the state's responsive explanations for the challenges.[10] It is not the function of an appellate court to substitute its judgment for that of the trial judge on the issue of credibility of the state's reasons unless the record reflects a clear or palpable abuse of discretion.
To reverse the trial judge's conclusions on this record would require us to second guess his evaluation of the prosecutor's credibility as well as the reasons given for challenging the two jurors. In the total context of the record, we find that reasonable persons could arguably agree with the trial court's action. Appellant has therefore shown no clear or palpable abuse of discretion exercised by the trial judge in finding that the state's explanations for exercising the two peremptory challenges against prospective black jurors were reasonable, race-neutral and non-pretextual. See also Hernandez v. New York, ___ U.S. ___, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), and Green v. State, 583 So.2d 647 (Fla. 1991).
While we affirm the convictions appealed from, we note that the Florida Supreme Court has not yet clearly defined the standard of review when Neil-Slappy issues are raised on appeal. Since such issues frequently recur, we certify the following question as one of great public importance:
WHAT IS THE STANDARD OF APPELLATE REVIEW OF A TRIAL COURT'S FINDING THAT THE STATE'S USE OF PEREMPTORY CHALLENGES AGAINST PROSPECTIVE BLACK JURORS WAS REASONABLE, RACE-NEUTRAL AND NON-PRETEXTUAL?
AFFIRMED.
WENTWORTH, Senior Judge, concurs.
ERVIN, J., concurs and dissents with written opinion.
ERVIN, Judge, concurring and dissenting.
While I fully agree with the majority that the evidence presented was sufficient to convict, I disagree, however, in regard to the peremptory challenge issue; I believe the majority has in part failed to apply the correct standard of review in assessing a court's rulings as to the proferred reasons by the state for peremptorily challenging a black juror. Because of the importance of the latter issue and my fear that certain appellate decisions, not only from this court but other appellate districts, have failed to take proper account of essential constitutional guarantees in the jury selection system,[11] I feel the need to restate some fundamental constitutional principles.
*358 Amendment XIV, Section 1 of the Constitution of the United States of America provides in part: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." In addition, our own state constitution states: "No person shall be deprived of any right because of race, religion or physical handicap." Art. I, § 2, Fla. Const. In light of these directives, it is axiomatic that where procedures implementing a neutral statute regarding juror qualifications operate to exclude certain persons from the venire on racial grounds, a denial of equal protection occurs. Batson v. Kentucky, 476 U.S. 79, 88, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69, 82 (1986). Accordingly, the purposeful and deliberate exclusion of blacks as jurors based on race violates equal protection. Id. at 84, 106 S.Ct. at 1716, 90 L.Ed.2d at 79 (quoting Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)). In fact, the striking of a single black juror for a racial reason violates the equal protection guarantee, even if other black jurors are seated, and even if there are valid reasons for striking other black jurors. State v. Slappy, 522 So.2d 18, 21 (Fla.) (quoting United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987)), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); Reynolds v. State, 576 So.2d 1300, 1301 (Fla. 1991).
The need to protect against bias is particularly important in the selection of a jury in a criminal proceeding, because the accused is entitled to be judged by a fair cross-section of the community, and because citizens cannot be precluded improperly from jury service. Slappy, 522 So.2d at 20. See Art. I, § 16, Fla. Const. Unfortunately, the nature of the peremptory challenge makes it uniquely suited to masking discriminatory motives. Slappy, 522 So.2d at 20; Batson, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. Abuses have occurred in the past from the unconstitutional use of the peremptory challenge, resulting in the appearance of impropriety. Reynolds, 576 So.2d at 1302. Accordingly, the state's privilege to strike individual jurors through the use of peremptory challenges is subject to the commands of the Equal Protection Clause, Batson, 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 82, and prosecutors in the state of Florida are accountable for their actions in the exercise of such challenges, Reynolds, 576 So.2d at 1301-02. For if the method of peremptorily challenging jurors is to remain in our trial system, there must be accountability for its use at every proceeding. Id. See also Batson, 476 U.S. at 102-08, 106 S.Ct. at 1726-29, 90 L.Ed.2d at 91-95 (Marshall, J., concurring).
As in any equal protection case, the burden is on the party claiming discriminatory selection of the venire, usually the defendant in criminal cases, to establish the existence of purposeful discrimination. Batson, 476 U.S. at 93, 106 S.Ct. at 1721, 90 L.Ed.2d at 85. Thus, "[a] party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race." Neil v. State, 457 So.2d 481, 486 (Fla. 1984) (footnote omitted). Broad leeway should be accorded to parties in making a prima facie showing that a likelihood of discrimination exists, and any doubt as to whether the complaining party has met this burden should be resolved in that party's favor. "If we are to err at all, it must be in the *359 way least likely to allow discrimination." Slappy, 522 So.2d at 22. See also Williams v. State, 574 So.2d 136, 137 (Fla. 1991).
Once the trial court is satisfied that the complaining party's objection is proper, the burden then shifts to the state to rebut the inference that its challenges were used for discriminatory purposes. Slappy, 522 So.2d at 22. The state must come forward with a neutral explanation for challenging the minority jurors that is related to the particular case being tried. Batson, 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. If the explanation is challenged by the opposing counsel, the trial court must review the record to establish record support for the reason proffered. Floyd v. State, 569 So.2d 1225, 1229 (Fla. 1990) cert. denied, ___ U.S. ___, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991). See also Sepler, "Discrimination in the Jury Selection Process: Trial and Appellate Perspectives," Vol. LXV, No. 7 The Fla.Bar J., July/Aug. 1991, at 56.
In determining whether the reasons advanced by the state are acceptable, the federal sector has recognized that a trial judge's findings in that regard turn on evaluation of credibility, and that a reviewing court should ordinarily give those findings great deference. Batson, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21. And see Hernandez v. State, ___ U.S. ___, ___-___, 111 S.Ct. 1859, 1868-69, 114 L.Ed.2d 395, 408-09 (1991). The state of Florida, on the other hand, has tempered that discretion. This is because, as recognized in Slappy, the Neil test, based on Article I, Section 16 of the Florida Constitution, "preceded, foreshadowed and exceeds the current federal guarantees." Slappy, 522 So.2d at 20-21 (footnote omitted). Thus, Florida has prohibited its trial judges from merely accepting the reasons proffered at face value, and has directed those judges to evaluate the state's reasons for its use of the challenges as they would weigh any disputed fact. Slappy, 522 So.2d at 22. The trial judge is to evaluate both the credibility of the person offering the explanation and the credibility of the reasons proffered. Tillman v. State, 522 So.2d 14, 16 (Fla. 1988). Accordingly, in order to accept the challenge in Florida, the trial court must conclude that the proffered reasons are first, neutral and reasonable, and, second, not a pretext. Slappy, 522 So.2d at 22.
Perhaps in recognition of the difficult task trial judges face in determining whether the proffered reasons are legitimate,[12] and certainly in an attempt to aid trial judges with that burden, our supreme court has set forth five nonexclusive factors upon which the trial judges can rely in assessing the legitimacy of the proffered explanation. Thus, the presence of one or more of the following factors will weigh against a finding of a race-neutral, reasonable, and non-pretextual reason:
(1) alleged group bias not shown to be shared by the juror in question, (2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror, (3) singling the juror out for special questioning designed to evoke a certain response, (4) the prosecutor's reason is unrelated to the facts of the case, and (5) a challenge based on reasons equally applicable to juror[s] who were not challenged.
Slappy, 522 So.2d at 22 (citing Slappy v. State, 503 So.2d 350, 355 (Fla. 3d DCA 1987)). See also Roundtree v. State, 546 So.2d 1042, 1044 (Fla. 1989).
I believe that it is reasonably clear that the correct standard for reviewing rulings in regard to whether the defendant has *360 established a prima facie showing that a strong likelihood of race discrimination existed is abuse of discretion. Reed v. State, 560 So.2d 203, 206 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990). I similarly believe, in the absence of one of the five Slappy factors, that the trial judge's findings as to whether the reasons proffered are race-neutral, reasonable, and non-pretextual are entitled to deference. Green v. State, 583 So.2d 647 (Fla. 1991). I do not believe, however, that it is reasonably clear that the same standard of review applies to rulings made by the trial court when one or more of the above Slappy factors are present. Unfortunately our supreme court has yet to clearly set forth the proper standard of review. While it speaks of "deference on appeal"[13] and reliance on the "color blindness of our trial judges,"[14] it has set forth the five Slappy factors which must be considered when assessing the credibility of the proffered reasons and directed that the trial judge's findings be supported by the record.[15]
Most telling is the Slappy court's own application of the facts to the law. In Slappy the reason the prosecutor offered for excusing two of the black jurors was that they were schoolteachers and therefore liberal and would be more lenient toward the defendant than to the state's case. Slappy, 522 So.2d at 19-20, 23. While the court found this reason to be race-neutral and reasonable, it stated that neutrality and reasonableness alone were not enough, because the state is also required to demonstrate the second factor: record support for the reasons offered and the absence of pretext. Id. at 23. "Thus, where the total course of questioning of all jurors shows the presence of any of the five factors listed in Slappy [503 So.2d at 355] and the state fails to offer convincing rebuttal, then the state's explanation must be deemed a pretext." Id. (emphasis added).[16] The Slappy court concluded that the state's reasons were a pretext, because the state failed to establish that the jurors were in fact liberal by asking the few questions that would have established the existence of that trait. Id. The court also observed that the prosecutor excused one black juror due to the juror's purported ill health, and that a single question to that juror would have established the existence or nonexistence of illness, however, the prosecutor asked no such question. Id. at 23 n. 3.
When each of those five Slappy factors is examined, it is evident that each will either be established or disproved by an examination of the record. Thus it is my belief that the proper standard of review to be applied to rulings when a Slappy factor is involved is one of competent, substantial evidence within the record. Certainly case law from the Florida Supreme Court supports such a standard. For example, if the record fails to support the proffered reason, the trial judge must find the reason to be unacceptable, or the appellate court will find error. See Williams v. State, 574 So.2d 136, 137 (Fla. 1991) (juror improperly excused for the reason that he failed to understand the felony murder doctrine, because record revealed no questions were asked of that juror in regard to that doctrine); Tillman v. State, 522 So.2d 14, 17 (Fla. 1988) (prosecutor challenged jurors on the ground that they lacked sufficient education to understand the proceedings, however, the record showed that each had a high school education, and since there is no requirement that a juror have a college education to serve, the reason was not supported by the record). Compare Floyd v. State, 569 So.2d 1225, 1229 (Fla. 1990) ("Had the court determined that there was no factual basis for the challenge, the state's explanation no longer could have been considered a race-neutral explanation[.]"), cert. denied, ___ U.S. ___, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991).
*361 It is equally clear that if the reasons proffered are not related to the facts of the case or to the parties or witnesses (the fourth Slappy factor), the trial judge must find the reasons to be pretextual. See Roundtree v. State, 546 So.2d 1042, 1045 (Fla. 1989) (prosecutor challenged one juror for the reason that she was thirty years old, single, and had never worked  the court found this reason pretextual, especially since the state had allowed a white, unemployed woman to sit). Consequently, while it would appear that the trial judge retains discretion to determine whether the proffered reasons are neutral, reasonable, and nonpretextual, once a Slappy factor exists, the abuse of discretion standard is no longer applicable, and the ruling on the challenge can only be upheld if competent, substantial evidence in the record exists to support both the challenge and the trial judge's ruling thereon.[17]Compare Green v. State, 583 So.2d 647, 652 (Fla. 1991) (abuse of discretion standard applied in absence of Slappy factor).
If the correct standard were applied to the facts at bar, reversal in my judgment would be clearly mandated as to one of the two rulings on the state's two challenges. The state used peremptory challenges to strike two black jurors  Mr. Jefferson and Ms. Williams, the only two blacks in the first group of eight venire members.[18] Defense counsel properly objected, pointing out that the defendant is also black.[19] There is really no serious argument that appellant did not satisfy his initial burden of showing a likelihood of discrimination, and the trial court obviously considered that the initial burden was satisfied, because it required the state to provide an explanation for the use of the challenges. See Williams, 574 So.2d at 137.
In regard to the first juror, the state gave the following reason:
Mr. Jefferson, his record shows a prior DUI conviction. I specifically asked if anybody had any convictions and he didn't volunteer that. So that alone is sufficient in my mind. I don't want him on the jury if he is not giving me truthful answers.
The record clearly shows that the prosecutor asked whether anybody had had any dealings with the state attorney's office, and whether any prospective juror or relative of theirs had ever been arrested for any type of crime. Consequently, it cannot be said that the reason proffered was not supported in the record. Moreover, the weight of authority has held that such a reason for striking a juror is valid without requiring the prosecutor to produce a certified copy of the conviction for the record. Tillman, 522 So.2d at 17 n. 1; Roundtree v. State, 546 So.2d 1042, 1045 n. 2 (Fla. 1989); Knight v. State, 559 So.2d 327, 328 (Fla. 1st DCA), review denied, 574 So.2d 141 (Fla. 1990). Therefore, I agree that the trial judge did not err by accepting the prosecutor's reason for striking Mr. Jefferson.
Once, however, the state was asked the reason for challenging juror Williams, the following exchange occurred:
MR. TOOMEY [the prosecutor]: On her, well just the fact she is unemployed, divorced has five children.
THE COURT: What's that mean to you?
MR. TOOMEY: To me it means, one, she is unemployed, she doesn't work, like to have jurors that work. Unless they have some means of support.
Later the prosecutor added:
MR. TOOMEY: Judge, on Ms. Williams just to supplement the record a little bit I don't think it makes sense what I said unless I also say she is divorced.
THE COURT: You said that.
MR. TOOMEY: I did?
MR. CASCONE [defense counsel]: Other people are divorced.

*362 MR. TOOMEY: If she was married, stayed home with five kids, makes allot [sic] more sense.
In reviewing the reason proffered by the state,[20] we are limited to the reason actually tendered by the state,[21] and in this case, the basic objection was that Ms. Williams was unemployed and divorced with five children. These reasons, while supported by the record,[22] have nothing to do with the particular case being tried: appellant was charged with three counts of dealing with stolen property. No connection between the facts involved, the parties, or the witnesses and the status of an unemployed divorcee with five grown children appears in the record. Thus, this reason falls under the fourth Slappy criterion, because it is unrelated to the facts of the case.
Moreover, if indeed this particular status typified some objectionable basis, the state failed to develop it in the record.[23] Additionally, the record clearly shows that the prosecutor accepted other jurors who were likewise unemployed or divorced.[24] Thus, the reason also falls under the fifth Slappy factor  a challenge based on reasons equally applicable to a juror who was not challenged. Roundtree, 546 So.2d at 1045 (single, thirty-year-old black woman who had never worked was improperly challenged on facts showing that the state allowed an unemployed white woman to sit).
To summarize, because the state's reasons for striking juror Williams are not supported by competent, substantial evidence in the record, I conclude that the reasons advanced were pretextual. Although I would reverse and remand the case for new trial, I concur with the majority in certifying the question to the Florida Supreme Court. If the supreme court chooses to answer the question, I consider it would be helpful for it to determine whether the same standard or different standards of review are applicable to each part of the Neil-Slappy review process, as discussed in this dissent.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[2] See also Banda v. State, 536 So.2d 221 (Fla. 1988), cert. denied, 489 U.S. 1087, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989); Ross v. State, 474 So.2d 1170 (Fla. 1985); Duest v. State, 462 So.2d 446 (Fla. 1985); Justus v. State, 438 So.2d 358 (Fla. 1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1332, 79 L.Ed.2d 726 (1984); McGee v. State, 435 So.2d 854 (Fla. 1st DCA 1983), review denied, 444 So.2d 417 (Fla. 1984).
[3] See also Albritton v. State, 476 So.2d 158 (Fla. 1985); Riggins v. State, 477 So.2d 663 (Fla. 5th DCA 1985); Steiner v. State, 469 So.2d 179 (Fla. 3d DCA), review denied, 479 So.2d 118 (Fla. 1985).
[4] Green v. State, 583 So.2d 647, 652 (Fla. June 6, 1991) ("After reviewing the record, we cannot say the trial judge abused his discretion in finding that the exercise of these peremptory challenges was racially neutral and not a pretext."). In Slappy, the court observed:

Part of the trial judge's role is to evaluate both the credibility of the person offering the explanation as well as the credibility of the asserted reasons. These must be weighed in light of the circumstances of the case and the total course of the voir dire in question, as reflected in the record.
* * * * * *
The function of the trial court in determining the existence of reasonableness is not to substitute its judgment for that of the prosecutor, but merely to decide if the state's assertions are such that some reasonable persons would agree.
522 So.2d at 22-23. See also Mitchell v. State, 548 So.2d 823 (Fla. 1st DCA 1989); McCloud v. State, 536 So.2d 1081 (Fla. 1st DCA 1988); Spillis Candela & Partners, Inc. v. The Association of School Consultants, Inc., 586 So.2d 351 (Fla. 3d DCA 1990); Bohannon v. State, 557 So.2d 680 (Fla. 3d DCA), review denied, 569 So.2d 1278 (Fla. 1990).
[5] Hernandez v. New York, 500 U.S. ___, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); United States v. Grandison, 885 F.2d 143 (4th Cir.1989), cert. denied, ___ U.S. ___, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990); United States v. Baker, 855 F.2d 1353 (8th Cir.1988), cert. denied, 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989).
[6] In State v. Artwine, 743 S.W.2d 51, 66 (Mo. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), the Missouri Supreme Court opined:

A finding of discrimination, or a finding of no discrimination, is a finding of fact. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). In a Batson context, the Supreme Court observed that because the trial judge's findings "largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." Batson, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21. "[F]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Anderson, 470 U.S. at 573, 105 S.Ct. at 1511, quoting F.R.C.P. 52(a).
"[A] finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson, 470 U.S. at 573, 105 S.Ct. at 1511, citing United States v. United States Gypsum, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Thus, if the trial court's "account of the evidence is plausible in light of the record viewed in its entirety, [an appellate] court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id., 105 S.Ct. at 1512.
In Commonwealth v. Lewis, 523 Pa. 466, 567 A.2d 1376, 1380 (1989), the Pennsylvania Supreme Court opined:
[T]he decision whether to disqualify a juror is within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion. Commonwealth v. Hardcastle, 519 Pa. 236, 256, 546 A.2d 1101, 1110 (1988); Commonwealth v. Colson, 507 Pa. 440, 490 A.2d 811 (1985), cert. denied, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986).
In State v. Young, 569 So.2d 570 (La. Ct. App. 1990), a Louisiana court applied the Batson "great deference" standard.
[7] Quoting term coined by Chief Judge Schwartz in Smith v. State, 574 So.2d 1195, 1196 (Fla. 3d DCA 1991).
[8] In Tillman v. State, 522 So.2d 14, 17 n. 1 (Fla. 1988), the Florida Supreme Court, in reviewing the trial court's acceptance of a prosecutor's reasons, observed:

This is not to say that every assertion made by a prosecutor to support the peremptory striking of a juror must find support within the record. There will be occasions where statements of fact (not conclusions drawn from fact) made by counsel, concerning a juror's background can be accepted by the court without the need to examine the record. For example, if a prosecutor represents to the court that a juror has, in the past, been convicted of a crime, the court may accept this as a reason for striking the juror without requiring the prosecutor to produce a certified copy of the judgment of conviction for the record. Furthermore, a judge is certainly permitted to place in the record his observations to support a prosecutor's reasons for striking a juror. If a prosecutor strikes a juror because the juror has been glaring at or using a hostile tone of voice with the prosecutor, the judge may state for the record that he has observed this behavior from the juror.
[9] Bryant v. State, 565 So.2d 1298 (Fla. 1990); Reed v. State, 560 So.2d 203 (Fla. 1990); State v. Williams, 566 So.2d 1348 (Fla. 1st DCA 1990); Dinkins v. State, 566 So.2d 859 (Fla. 1st DCA 1990), City of Miami v. Cornett, 463 So.2d 399 (Fla. 3d DCA), cause dismissed, 469 So.2d 748 (Fla. 1985).
[10] Bohannon v. State, 557 So.2d 680 (Fla. 3d DCA), review denied, 569 So.2d 1278 (Fla. 1990). See Huff v. State, 569 So.2d 1247 (Fla. 1990) [Where the action of the trial court is discretionary, the order of the lower court will not be disturbed on appeal unless an abuse of discretion is clearly shown]. See generally Booker v. State, 514 So.2d 1079 (Fla. 1987); Albritton v. State, 476 So.2d 158 (Fla. 1985); Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
[11] See, for example, Jefferson v. State, 549 So.2d 222, 223 (Fla. 1st DCA 1989) ("[T]he court ... did not abuse its discretion in ruling that the reasons the state offered in support of peremptory challenges were race neutral and reasonable."); McCloud v. State, 536 So.2d 1081, 1082 (Fla. 1st DCA 1988) ("It is not the function or prerogative of an appellate court to substitute its judgment for that of the trial judge on the issue of the credibility of the state's reasons unless the record reflects a clear abuse of discretion."); Spillis Candela & Partners, Inc. v. Association of School Consultants, Inc., 586 So.2d 351, 351 (Fla. 3d DCA 1990) ("[W]e find no abuse of discretion by the trial court in conducting the Neil inquiry and accepting the explanations for the challenges offered by appellees."); Bohannon v. State, 557 So.2d 680, 681 (Fla. 3d DCA) ("[W]e conclude that the trial court did not abuse its discretion in concluding that the state's peremptory challenge of a single black juror ... was not unconstitutionally based upon her race."), review denied, 569 So.2d 1278 (Fla. 1990); Thomas v. State, 502 So.2d 994, 996 (Fla. 4th DCA) ("[W]e find that the record supports the exercise of the court's discretion."), review denied, 509 So.2d 1119 (Fla. 1987).
[12] As Justice Marshall wrote in Batson, 476 U.S. at 105-06, 106 S.Ct. at 1728, 90 L.Ed.2d at 94,

[T]rial courts face the difficult burden of assessing prosecutors' motives. Any prosecutor can easily assert facially neutral reasons for striking a juror, and trial courts are ill-equipped to second-guess those reasons. How is the court to treat a prosecutor's statement that he struck a juror because the juror had a son about the same age as defendant, or seemed "uncommunicative," or "never cracked a smile" and, therefore "did not possess the sensitivities necessary to realistically look at the issues and decide the facts in this case[.]"
(Citations omitted.)
[13] Reynolds, 576 So.2d at 1301.
[14] Reed, 560 So.2d at 206.
[15] Slappy, 522 So.2d at 24; Floyd, 569 So.2d at 1229.
[16] See also Reynolds, 576 So.2d at 1302, wherein the court directed that the qualities of neutrality, reasonableness, and non-pretext must be judged by using the nonexclusive list of factors set forth in Slappy.
[17] For a somewhat similar analysis, see Mitchell v. State, 548 So.2d 823, 824-25 (Fla. 1st DCA 1989).
[18] The state later sought to strike a third black venire member, but ultimately accepted her as the alternate juror when confronted in regard to that challenge by defense counsel and the court.
[19] A strong likelihood of discrimination is created if the state eliminates every member of the minority. Reynolds, 576 So.2d at 1301.
[20] There is no question that the issue was not properly preserved for appeal in that defense counsel stated that the reason given was superfluous and moved to strike the panel. Compare Floyd v. State, 569 So.2d 1225 (Fla. 1990) (defendant failed to object to reason offered by the state and therefore failed to preserve error for appellate review), cert. denied, ___ U.S. ___, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991).
[21] As stated previously, the rule is clear that once the trial court determines that the defendant has satisfied the initial burden of showing a strong likelihood that the challenge was used in a discriminatory fashion, the burden shifts to the state to rebut the inference. Yet the majority, in an attempt to validate what occurred here, ignores that burden and goes so far as to create a reason for the state, i.e., that "the tandem of unemployment and divorce may arguably indicate some prospect of a level of detachment from the proceedings not based on race[.]" Clearly, this is improper.
[22] Williams stated: "I'm not employed. I'm divorced. I have five children outside of the home, none inside of the home."
[23] I refuse to speculate regarding how divorced women with grown children are somehow incompetent to be jurors. I likewise decline to speculate that divorced, unemployed people would be lenient to defendants accused of dealing in stolen property. If indeed such a status does indicate the "prospect of a level of detachment from the proceedings," as the majority argues, this trait was simply not developed on the record. If the prosecution was in fact worried about how Ms. Williams existed financially, he had merely to ask. Perhaps she was retired, or independently wealthy. Certainly those conclusions are just as legitimate as the inference that she was a thief herself, or that she dealt in stolen property, for which there was no evidence.
[24] Ms. Elaine Coal, a white married woman with one child, who was not employed, was accepted, as was Ms. Christeen Devose, a white woman, who was divorced with no children and employed. Ms. Davis, a black woman who was employed but divorced with two children, was ultimately accepted by the state as the alternate juror, after it attempted to strike her, offering the reason that the prosecutor would rather have the next juror, a white male IRS employee, as a juror.