609 So.2d 679 (1992)
Carlton MANSELL, a/k/a Antonio Green, Appellant,
v.
STATE of Florida, Appellee.
No. 91-2117.
District Court of Appeal of Florida, First District.
December 1, 1992.
Nancy Daniels, Public Defender, Nancy L. Showalter, Asst. Public Defender, Paula S. Saunders, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., Laura Rush, Asst. Atty. Gen., for appellee.
KAHN, Judge.
Carlton Mansell appeals his conviction and sentence for possession of cocaine, *680 raising as his only point on appeal a contention that the trial court erred in finding that the reason given by the state for its use of a peremptory challenge to exclude a potential black juror was a valid, nonpretextual, race neutral reason. We reverse.
On the day of Mansell's arrest, twenty to thirty Escambia County Sheriff's officers were engaged in the execution of a search warrant at a small apartment complex. Appellant lived in an apartment in the complex, but which was not the focus of the search warrant. Officer McDonald, one of the deputies assisting in the execution of the search warrant, saw two people sitting on a porch at the front of an apartment. One of these two people turned out to be Mansell, who was seated on a stool with his hands down. According to Officer McDonald, Mansell dropped a small rock-type object, later identified as cocaine, on the porch near his feet. Another deputy approached appellant and ordered him to the ground in front of the porch. According to McDonald, another man, later identified as Derrick Gainer, ran around the side of the porch and hid underneath a nearby car. The officers observed and collected several small pieces of crack cocaine from the floor of the porch. They also discovered $417.00 in cash on Mansell's person.
The officer who actually recovered the cocaine, Officer Akin, testified that he retrieved the crack after McDonald pointed it out to him. According to Akin, the drugs were located about two feet from the stool on which Mansell had been seated. Akin also noted the presence of three or four other people in front of the apartment.
Appellant's defense at trial was that when the officers arrived to execute the search warrant, one Derrick Gainer ran away, throwing the cocaine on the porch near where Mansell was seated. Gainer, called as a rebuttal witness by the state, denied having drugs and admitted having $630.00 in cash on his person at the time of this incident. According to Gainer, $200.00 was to be used to get his car fixed, and $400.00 was actually his girlfriend's mother's rent money. Gainer was unable to provide the girlfriend's mother's landlord's name or a location where the rent would be paid.
It is quite clear that the jury in this case was called upon to resolve questions of credibility with regard to the testimony of Mansell and Gainer, both black men.
During jury selection, the following transpired:
MR. WILLIAMS [Prosecutor]: Your Honor, I'd like to inquire of Mr. Tolbert at the bench, please.
THE COURT: Okay, fine.
(Bench conference concluded)
THE COURT: Mr. Tolbert, sir, could you come forward?
(At the bench)
THE COURT: Good afternoon. Mr. Tolbert, the attorneys would like to address some questions to you out of the hearing of the other jurors. Okay. Mr. Williams.
MR. WILLIAMS: Mr. Tolbert, you work for the Escambia County Utilities?
PROSPECTIVE JUROR: I work for utilities service in Gulf Breeze.
MR. WILLIAMS: Oh, Gulf Breeze. Have you ever been charged with a crime yourself?
PROSPECTIVE JUROR: No, not  not any crimes. I have been  well, about 12 years ago, 14 years ago I had a drunken driving test  I mean, a  but I didn't have any license and I had it just  I didn't have any license.
MR. WILLIAMS: What happened to that case?
PROSPECTIVE JUROR: I paid it and got right off it.
MR. WILLIAMS: You were charged with no driver's license or no suspended driver's license?
PROSPECTIVE JUROR: I didn't have a driver's license at all.
MR. WILLIAMS: So you were charged with a misdemeanor and paid a fine?
PROSPECTIVE JUROR: Yes, sir.
MR. WILLIAMS: On your sheet you said you hadn't had any prior  been accused of a crime?
PROSPECTIVE JUROR: Not of a crime, no.

*681 MR. WILLIAMS: Is that because you consider it a misdemeanor?
PROSPECTIVE JUROR: Yeah, I guess so. They didn't do nothing about it.
MR. WILLIAMS: Okay. Let me ask you this. This case involves Crescent Street. Do you know that neighborhood?
PROSPECTIVE JUROR: No, I am not familiar with it.
MR. WILLIAMS: And how do you feel about drugs in the black neighborhoods?
PROSPECTIVE JUROR: Well, I don't approve of it myself. I just haven't  I don't use it and I don't go for it, because too many children and stuff, you know.
MR. WILLIAMS: Let me tell you one question. All the officers will be white here, but the defendant  mainly the defense witnesses will be black. Will that make it harder for you in any way to find him guilty if you believe the facts?
PROSPECTIVE JUROR: Nothing is going to stop me from what I think is right, yeah.
MR. WILLIAMS: In other words, that's why I brought you up here, that's something I wanted to ask you.
PROSPECTIVE JUROR: Yeah.
MR. WILLIAMS: Thank you, Mr. Tolbert.
THE COURT: Would you like to ask any questions?
MR. ROANE [Defense attorney]: No, judge.
THE COURT: Thank you. (Juror Tolbert off the bench)
THE COURT: Is there any challenge for cause?
MR. WILLIAMS: Well, Your Honor, I'd move to challenge Mr. Tolbert for saying he hasn't been accused of a crime when he had a no valid driver's license or suspended driver's license. He said he paid a fine for it.
THE COURT: The responses that I just heard from him indicate that there might be some confusion in his mind regarding whether or not a traffic citation for which one comes in and essentially pays a fine is in the nature of a crime. For that reason I would not consider a challenge for cause.
MR. WILLIAMS: Okay.
* * * * * *
MR. WILLIAMS: I move to strike 20, Mr. Bryant, No. 16, Mr. Tolbert.
MR. ROANE: Judge, we'd ask for reasons on Mr. Tolbert. He is a black male, and our defendant is black in this case, and we feel that any answers that he gave or did not give doesn't show any reason that he would not be a fair and impartial juror in this case.
THE COURT: Mr. Williams, you may respond.
MR. WILLIAMS: Well, Your Honor, he failed to answer truthfully on a card that he had 
THE COURT: What card?
MR. WILLIAMS: On the juror questionnaire.
THE COURT: Show me exactly what you're referring to, Counselor.
MR. WILLIAMS: Never been accused of a crime.
THE COURT: I have been shown a copy of the jury questionnaire in which it is asked have you or any member of your family ever been an accused, complainant or witness in a criminal case, and he has checked the response no. He has then come before the Court and given an explanation which was somewhat confusing in that he, first of all, said he had a drunk driving charge and then he didn't have a driver's license and that he wasn't convicted, but he just paid a fine and took care of it. It appears that at the very least he is confused about the response to that and at the very worse that he has attempted to cover over that response and misrepresent. The Court would, therefore, find that that is sufficient basis to sustain a peremptory challenge separate and apart from being racially motivated.
MR. ROANE: Judge, we would ask that the Court inquire that the State  if the State attorney has a record on Mr. Tolbert, that he does have a prior conviction. They are sitting here basing the fact on that that he may have been confused, and I believe he stated that again a *682 drunk driving test, but then didn't have a license. So I don't know if the State attorney has any information that he ever has been convicted, and we may ask that they produce that and show whether there is a prior conviction and, therefore, that would be the basis for this alleged wrong answer if it was an alleged wrong answer or mistake. That's our understanding, that they have available records of jurors in this case. I don't know.
THE COURT: But he has himself admitted it on the record in which he just took care of paying some amount, and he indicated that he did not have any license at the time, and that's what it was, and the Court acknowledges that the no valid driver's license charge is an offense in the State of Florida. So I don't find it necessary to seek any further evidence on that. The State  you have four peremptory challenges remaining. The jurors thus far, 1, 11, 13, 21, 24 and 25.
MR. ROANE: Judge, just for the record, are you striking on Mr. Tolbert? We'd ask the Court to note that the State was satisfied with him on the prior case, when a white male was a defendant, and they asked the Court to inquire as to the defense striking Mr. Tolbert as being racially biased, and they seemed to be satisfied at that time that he would be a proper and adequate juror when a white defendant was on trial, but now they feel he wouldn't be proper because now Mr. Mansell is a black defendant.
THE COURT: Okay. The record will reflect.
In this case it appears that the trial court felt that the defendant's initial objection to the peremptory challenge met the test of State v. Neil, 457 So.2d 481 (Fla. 1984), and appropriately required the assistant state attorney to provide reasons for his peremptory challenge of prospective juror Tolbert. See State v. Slappy, 522 So.2d 18, 22 (Fla. 1988) (doubt as to whether initial burden has been met should be resolved in favor of the complaining party); Williams v. State, 574 So.2d 136, 137 (Fla. 1991) (where trial court required state to explain the exclusion, "there can be no doubt that the defense created sufficient doubt in the trial court's mind").
Having thus required the state to respond, the focus moved to the question of whether the state could provide specific reasons based upon the prospective juror's responses or other facts evident from the record for striking the black juror. State v. Slappy, supra at 23. The reasons offered must be race neutral, reasonable, and find support in the record. Id. Under the case law, the trial judge may not merely accept the reasons proffered at face value, but must evaluate those reasons as he would weigh any disputed fact. As the supreme court indicated in Slappy, an explanation offered by the state may appear reasonable, but may still be found upon critical examination to be a pretext. This court has previously held that once the trial court performs its full function of critically evaluating the state's explanation, the standard of review applicable to the trial court's decision in that regard is abuse of discretion. Files v. State, 586 So.2d 352 (Fla. 1st DCA 1991), review pending, No. 78,552.
We have concluded in this case, however, that the abuse of discretion test does not apply, since under Roundtree v. State, 546 So.2d 1042 (Fla. 1989), and Slappy, supra, the trial court did not perform the proper evaluation of the assistant state attorney's explanation. Roundtree places the burden upon trial judges to critically evaluate the state's explanation to assure it is not a pretext for racial discrimination. 546 So.2d at 1045.
Initially, upon consideration of the reasons offered by the state, the trial court found as to Mr. Tolbert that "at the very least he is confused ... and at the very worse that he has attempted to cover up that response and misrepresent." Without explanation, however, the court failed to critically evaluate additional record evidence offered by the defense in response to the state's proffered reasons. Defense counsel properly asked the court to take note that in the selection of the jury in the immediately preceding case, involving a white male defendant, the state actually *683 questioned a defense strike of the very same juror, Mr. Tolbert, as being racially biased. According to defense counsel, "they seemed to be satisfied at that time that he would be a proper and adequate juror when a white defendant was on trial, but now they feel he wouldn't be proper because now Mr. Mansell is a black defendant." With no contradiction from the assistant state attorney, the trial court directed that the record would reflect this matter. We consider that once the defense successfully inserted these background facts into the matter, the court was required, under Slappy and Roundtree, to critically evaluate the state's explanation to determine not only reasonableness, but absence of pretext. Unfortunately, the trial court, having accepted the defense's proffer of additional factual information, failed to make any further determination or inquiry as to the question of pretext. We feel bound by the following language from Roundtree, supra:
The state must proffer reasons that are, first, neutral and reasonable and, second, not a pretext. Additionally, the trial judge cannot merely accept the proffered reasons at face value, but must evaluate those reasons as he or she would weigh any disputed fact.
* * * * * *
It is not sufficient that the state's explanations for its peremptory challenges are facially race neutral. The state's explanations must be critically evaluated by the trial court to assure they are not pretexts for racial discrimination.
546 So.2d at 1044-45.
Under Files, supra, once the court performs the required evaluation in light of all evidence presented both in support of and contrary to an attempted peremptory challenge, the standard of review is abuse of discretion. The same rule does not obtain where the court does not apply the proper legal standard. See Walter v. Walter, 464 So.2d 538, 539 (Fla. 1985) ("The correction of an erroneous application of law and the determination that the trial court abused its discretion are two separate and distinct appellate functions").
REVERSED and REMANDED for a new trial.
MINER and ALLEN, JJ., concur.